Sidney A. ERICKSON,
Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–Appellee.

No. 90–9008.

United States Court of Appeals,
Tenth Circuit.

July 9, 1991.

Mark H. Scheffel (John D. Moats with him on the briefs), John D. Moats & Associates, P.C., Denver, Colo., for petitioner-appellant.

Joy Pritts (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and Charles E. Brookhart, Attys., with her on the brief), Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before ANDERSON and McWILLIAMS, Circuit Judges, and ALLEY,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Sidney A. Erickson appeals from a decision of the United States Tax Court sustaining an income tax deficiency for the taxable year 1983 in the amount of $135,379 plus additions to tax under 26 U.S.C. §§ 6651(a)(1), 6653(a)(1) and 6654, totalling $23,412. R. at Tab 19; *see Erickson v. Commissioner*, 58 T.C.M. 352 (CCH) (Memo. 1989–552 filed Oct. 10, 1989). We affirm.

On May 9, 1983, Erickson flew a Cessna 404 containing approximately 2,420 pounds of marijuana over the Gulf of Mexico and into the United States. Documents and other items on the plane indicated that the flight originated in Belize. United States customs officers monitored the flight, pursued Erickson, and arrested him after he landed in Union County, New Mexico. He was the sole occupant of the plane. After his arrest, Erickson posted a $50,000 appearance bond which he paid in cash, in $20 bills. Subsequently, Erickson was convicted in federal court of importing marijuana and possessing it with intent to distribute, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 841(a)(1). That conviction was af-

firmed by this court in *United States v. Erickson*, 732 F.2d 788 (10th Cir.1984).

During the course of the criminal proceedings, Erickson filed a motion to suppress which turned on his allegation that he had a right of privacy in the airplane that had been violated by the government when it installed a transponder. After a hearing, the district court determined that Erickson failed to establish a legitimate expectation of privacy by proving lawful ownership or a sufficient possessory interest in the plane containing the marijuana. *Id.* at 790. However, the Tax Court found as a fact that Erickson admitted having an ownership or possessory interest in the marijuana itself.[1] 58 T.C.M. at 353.

The Commissioner introduced evidence before the Tax Court showing that Erickson conducted substantial business in cash in 1983, and had low balances in the three bank accounts located by the government. Cash transactions, including cash paid for the appearance bond, totalled approximately $75,000. The evidence further established that Erickson had a hanger and another plane. He stated he was in business with an individual who, to Erickson's knowledge, was using a fictitious name for business purposes; the business had an address in Texas which was just a private post office drop box; Erickson admitted falsifying the address of the business. Transcript at 19. Erickson stated that he had possession of and maintenance responsibility for the Cessna 404 for a period of time before the flight in question, using his facilities in Grand Junction, Colorado, and spent $14,000 for repairs, *id.* at 79. Following the suppression hearing in the district court, the court expressly found that in important respects Erickson's testimony was not credible, Transcript at 114, and the record amply discloses that his aircraft op-

---

* Honorable Wayne E. Alley, United States District Court for the Western District of Oklahoma, sitting by designation.

1. At the suppression hearing in the district court the following exchange occurred between the Prosecutor and Erickson:

Q Sir, were you flying that aircraft on May 9, 1983 with a load of marijuana when it landed at Moses, New Mexico?
A Yes.

Q Did you have any ownership or possessory interest in the marijuana cargo in that plane at the time?
A Huh—
Q Or was it somebody else?
A Yes, I did.
Transcript of Proceedings of the United States District Court, July 13, 1983 at 65 (hereinafter "Transcript").

erations, and conduct were characterized by falsehoods, deception and concealment.

Mr. Erickson has never filed a federal income tax return for the taxable year 1983. On June 14, 1984, the Commissioner issued a statutory notice of deficiency to Erickson which stated, in part, "In the absence of adequate records, your taxable income for the taxable year ended December 31, 1983 is figured by reference to specific expenditures as shown at Exhibit 1." Notice of Deficiency at 3. That exhibit contained the cash expenditures referred to above, plus the amount of $200,000 estimated to be the purchase price of the marijuana in Erickson's possession. The exhibit to the notice of deficiency sets forth the following relevant items of charged expenditures:

### 1983 Application of Funds

. . .

| | | |
|---|---|---:|
| 2. | Avionics Aviation bill dated 3–1–83 | 8,000 |
| 3. | Cashier's check # 141422 dated 3–31–83 | 5,000 |

. . .

| | | |
|---|---|---:|
| 5. | Purchase price of 2,420 pounds of marijuana purchased in Belize 5–9–83 | 200,000 |
| 6. | Cash bond paid in $20 bills to clerk of court—Albuquerque, New Mexico 5–83 | 50,000 |
| 7. | Cashier check # 387093 dated 3–14–83 | 4,395 |
| 8. | Jamaica plane ticket 2–21–83 | 1,963 |
| 9. | Jamaica hotel bill 3–27–83 | 1,481 |

. . .

| | | |
|---|---|---:|
| 11. | Cash receipt 3–6–83 | 1,311 |
| 12. | Increase (Decrease) in Bank Balances | |

| | Beginning Bal. 1–1–83 | Ending Bal. 4–30–83 | |
|---|---|---|---:|
| A) Bank of Aspen Acct # 70–986–7 | $ 239 | $3,565 | 3,326 |
| B) Intrawest Bank Acct # 627–741–2 | $1,320 | $ 547 | (773) |
| C) Texas Commerce Bank Acct # 0319996 | $ (155) | $ 221 | 376 |
| TOTAL | | | $421,079[2] |

Erickson petitioned the United States Tax Court challenging the Commissioner's determination, especially that part of the determination attributing the cost of the marijuana to unreported income. In the Tax Court, Erickson did not testify and presented no defense on the merits. Rather, he argued: (1) that the Commissioner's notice of deficiency was not entitled to the usual presumption of correctness in a civil proceeding because the Commissioner failed to substantively link Erickson to an income producing activity; and (2) the Commissioner erroneously used the cash expenditures method for reconstructing income because he failed to establish an opening and closing net worth, or to identify or quantify nontaxable sources of funds available to Erickson. The Tax Court rejected both of those arguments. Because Erickson offered no evidence, and in view of the evidence introduced by the Commissioner, the Tax Court found that Erickson failed to carry his burden of proving that the deficiency determination, as modified by certain concessions and adjust-

**2.** The total included the value of the Cessna flown by Erickson. The Commissioner later dropped that item.

ments, was incorrect, and judgment was entered against him. Erickson reasserts both of his arguments on appeal.

## DISCUSSION

It is well-established that the Commissioner's deficiency determination in a civil case is presumptively correct, and that the taxpayer bears the burden of coming forward with sufficient evidence to overcome the presumption. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Jones v. Commissioner*, 903 F.2d 1301, 1303 (10th Cir.1990); *Zell v. Commissioner*, 763 F.2d 1139, 1141 (10th Cir.1985). However, the presumption of correctness "is only as strong as its rational underpinnings. Where it lacks a rational basis the presumption evaporates." *Llorente v. Commissioner*, 649 F.2d 152, 156 (2d Cir.1981). *Some* reasonable foundation for the assessment is necessary to preserve the presumption of correctness. *Jones v. Commissioner*, 903 F.2d at 1304. *See United States v. Janis*, 428 U.S. 433, 442, 96 S.Ct. 3021, 3026, 49 L.Ed.2d 1046 ("Certainly, proof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous."), *reh'g denied*, 429 U.S. 874, 97 S.Ct. 196, 50 L.Ed.2d 158 (1976); *Gerardo v. Commissioner*, 552 F.2d 549, 554 (3d Cir.1977) ("[I]n order to give effect to the presumption on which the Commissioner relies, some evidence must appear which would support an inference of the taxpayer's involvement in [illegal] activity during the period covered by the assessment. Without that evidentiary foundation, minimal though if [sic] may be, an assessment may not be supported even where the taxpayer is silent."); *De Cavalcante v. Commissioner*, 620 F.2d 23, 28 (3d Cir.1980) (presumption of correctness requires "a minimal factual basis"); *Carson v. United States*, 560 F.2d 693, 696 (5th Cir.1977) (some factual foundation necessary for presumption of correctness to attach). *Cf. Weimerskirsch v. Commissioner*, 596 F.2d 358, 360 (9th Cir.1979) ("[B]efore the Commissioner can rely on this presumption of correctness, the Commissioner must offer some *substantive* evidence showing that the taxpayer received income from the charged activity.") (emphasis added). Naked or purely arbitrary assessments are not entitled to a presumption of correctness. *See Llorente v. Commissioner*, 649 F.2d at 156. The Commissioner does not have "carte blanche for imposing Draconian absolutes." *Webb v. Commissioner*, 394 F.2d 366, 373 (5th Cir. 1968).

Erickson contends that the notice of deficiency in this case is utterly arbitrary. His briefs concentrate on the marijuana. As to the proposed deficiency based upon the assumption that he received taxable income in 1983 in an amount sufficient to buy the marijuana in his possession, Erickson argues that the Commissioner must link him to an illegal income producing activity, i.e., proof of drug sales or, at the very least, proof that he actually purchased the marijuana. He cites *Weimerskirsch v. Commissioner*, 596 F.2d 358 (9th Cir.1979); *Llorente v. Commissioner*, 649 F.2d 152 (2d Cir.1981); and *Jackson v. Commissioner*, 73 T.C. 394 (1979), to support his argument that the Commissioner must connect him to a business as a source of taxable funds. Those cases, as noted by the Tax Court, are distinguishable. Deficiencies were proposed in those cases largely on the word of informants or the mere presence of the taxpayer on the fringes of illegal activity. Something more was required in such situations to add sufficient plausibility to the notices of deficiency. The situation here is more closely aligned with *Delaney v. Commissioner*, 743 F.2d 670 (9th Cir.1984); *Schad v. Commissioner*, 87 T.C. 609 (1986); *aff'd without published opinion*, 827 F.2d 774 (11th Cir. 1987); and *Tokarski v. Commissioner*, 87 T.C. 74, 76 (1986). In each of those cases, taxpayers possessed liquid assets, or were shown to have expended funds during the tax year. The key was connecting the taxpayers to the assets, not to a business. Once the Commissioner demonstrated sufficient minimal facts to show an ownership interest in assets possessed by the taxpay-

ers, the presumption of correctness remained with the notice of deficiency and the taxpayers had the burden of satisfactorily explaining how they came to possess the liquid assets, and to show why the assets did not represent taxable income in the year in question.

In this case, Erickson's implied argument that he was merely a pilot-for-hire, or mule, and did not have an interest in the marijuana, is negated by an express factual finding to the contrary by the Tax Court. On the record which we have outlined above,[3] we cannot say that finding is clearly erroneous. The problem lies in comparing marijuana to the cash and cash equivalents possessed by the taxpayers in *Delaney*, *Schad*, and *Tokarski*. However, we think there is no practical difference once a minimal showing of ownership has been made. Considering the Byzantine ways of drug trafficking, it is just as easy to argue that cash in one's possession belongs to someone else, as the taxpayer did in *Schad*, as it is to argue that marijuana in one's possession belongs to someone else. The only real difference we must address is the necessary assumption that the taxpayer purchased the drugs with cash or cash equivalents in the taxable year. Once that assumption is made we are squarely within the *Delaney–Schad–Tokarski* rule that taxpayers retain the burden of explaining the source and nontaxability of funds in their possession.[4]

The drug trade is a cash-intensive business. Drugs are very close to being cash equivalents. We do not think it an impermissible stretch to assume that someone who is importing more than a ton of marijuana into the United States by air paid for the drugs in cash at a time proximate to the date of the shipment. This is enough to provide a rational underpinning for the notice of deficiency and place the burden

on Erickson who, after all, is the one in possession of all the facts concerning the transaction. As the Tax Court said in *Schad v. Commissioner*, 87 T.C. at 619–20:

> We do not think the Weimerskirsch line of cases was intended to exempt narcotics dealers from these long established legal principles and create a safe haven for them, permitting them to be taxed on money in their possession only if they are caught in the act of buying or selling narcotics for a profit. We think connecting petitioner to the funds that form the basis of the deficiency is sufficient to give him the burden of proving the deficiency determination erroneous.

Our holding on this point is dispositive, since *either* the evidence just outlined *or* the cash expenditures approach would provide a sufficient basis to preserve the presumption of correctness in the notice of deficiency. However, the Tax Court and the parties on appeal address both issues as if each must be resolved in favor of the government to sustain the notice. Furthermore, the notice of deficiency itself refers to the cash expenditures method of income reconstruction, not to possession of liquid assets. The Commissioner has made no effort to harmonize the principles involved. Accordingly, we consider Erickson's second argument.

■ The second issue in this case relates to the Commissioner's determination of income based on cash expenditures. It is well established that taxpayers are required to keep adequate records or books from which their correct tax liability may be determined. *See* 26 U.S.C. § 6001; 26 C.F.R. 1.6001–1; *Jones v. Commissioner*, 903 F.2d at 1303 (10th Cir.1990); *Anson v. Commissioner*, 328 F.2d 703, 705 (10th Cir. 1964) ("[T]he privilege of original self-assessment accorded the taxpayer carries with it the burden of support through the

---

**3.** Erickson's cash transactions and his possession of a hanger and several planes are consistent with a proprietary interest in the planes' cargo.

**4.** We need not address the situation where a taxpayer is in possession of, and has some indicia of proprietary interest in illiquid assets. In a proper case such evidence may provide sufficient linkage or support to other evidence to justify a notice of deficiency.

maintenance of records which clearly and accurately reflect income."). Where, as here, the taxpayer keeps inadequate records or no records at all, the Commissioner is entitled to reconstruct his income by any reasonable means. *Carson v. United States,* 560 F.2d 693, 696 (5th Cir.1977); *Petzoldt v. Commissioner,* 92 T.C. 661, 687 (1989):

> The absence of statutory guidelines suggests that Congress intended that respondent should have great latitude in making determinations of liability, particularly where the taxpayer files no returns and refuses to cooperate in the ascertainment of his income. Thus, respondent is entitled to use any reasonable means of reconstructing income. Further, he is given greater latitude in determining which method of reconstruction to apply where the case involves an illegal enterprise in which the taxpayer has failed to file a return and has kept no records. Nor is mathematical exactitude required of respondent, for if it were it "would be tantamount to holding that skillful concealment is an invincible barrier to proof."

*Id.* at 693–94 (quoting *Llorente v. Commissioner,* 74 T.C. at 266, and *United States v. Johnson,* 319 U.S. 503, 517–18, 63 S.Ct. 1233, 1240–41, 87 L.Ed. 1546, *reh'g denied,* 320 U.S. 808, 64 S.Ct. 25, 88 L.Ed. 488 (1943)).

■ In general, the cash expenditures method of reconstruction assumes, absent some explanation by the taxpayer, that the amount by which a taxpayer's expenditures during a taxable period exceed his reported income has taxable origins. *Burgo v. Commissioner,* 69 T.C. 729, 742 (1978). *See Cohen v. Commissioner,* 176 F.2d 394, 397 (10th Cir.1949).

■ Erickson argues that the Commissioner's specific expenditures approach in this case was fatally deficient because the Commissioner failed to establish an opening and closing net worth for Erickson, or to identify and quantify funds available to him. Opening Brief for Appellant at 20–22;

Reply Brief for Appellant at 6. Without such figures, according to Erickson, "the Internal Revenue Service was unable to rule out or account for the use of taxpayer's capital to pay for alleged purchases which served as the basis for an assessment," and the Commissioner's "termination assessment ignore[d] the possibility that purchases were made with either a nontaxable or previously taxed source of funds." *Id.* at 5.

In support of his position, Erickson cites a number of cases which are distinguishable from the type of situation before us largely because they involved criminal tax fraud prosecutions in which the burden of proof is on the government. *See, e.g., Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), *reh'g denied,* 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731 (1955); and *Taglianetti v. United States,* 398 F.2d 558 (1st Cir.1968), *aff'd per curiam,* 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969). He also cites cases in which courts have attempted to equate the opening net worth and similar requirements of *Holland* to all civil tax cases, *e.g., Hoffman v. Commissioner,* 298 F.2d 784, 786–87 (3rd Cir.1962), *United States v. Caserta,* 199 F.2d 905 (3rd Cir.1952), *Friedberg v. United States,* 207 F.2d 777 (6th Cir.1953), *aff'd* 348 U.S. 142, 75 S.Ct. 138, 99 L.Ed. 188 (1954). Cf. *Petzoldt v. Commissioner,* 92 T.C. 661, 694 (1989) ("We agree with petitioner that the requirements set forth in *Holland v. United States* ... are applicable to cases involving the cash expenditures method of income reconstruction.").

In response, the Commissioner cites civil tax cases which hold that the cash expenditures method does not necessitate a determination of the total net worth of the taxpayer at any time. *See Price v. United States,* 335 F.2d 671, 677 (5th Cir.1964); *Olinger v. Commissioner,* 234 F.2d 823 (5th Cir.1956).

In *Petzoldt v. Commissioner,* 92 T.C. 661 (1989), the Tax Court concluded that *Holland* did not always require an opening

and closing net worth in order to employ the cash expenditures method. The court apparently required the Commissioner to identify sources of available nontaxable funds, but went on to state that "respondent does not have to negate every possible source of nontaxable income if he proves *a likely source of income.*" *Id.* at 696 (emphasis added). The court then stated as to the facts of that case, that the petitioner had the burden of proof "where respondent has connected petitioner through substantive evidence *to a likely source for the expenditures* and has shown petitioner had no likely source for a decrease in net worth...." *Id.* (emphasis added).

The Tax Court in *Petzoldt* was not obliged to harmonize its analysis with the *Delaney–Schad–Tokarski* rule relating to specific assets, because the income reconstruction from drug trafficking in that case was, for the most part, not tied directly to specific assets in the taxpayers's possession. And, of course, the asset-in-possession cases did not deal with expenditures since the assets in those cases were cash or precious coins. The Tax Court in this case did not attempt to rationalize the analysis in *Petzoldt* with *Delaney, Schad* and *Tokarski*, although it relied on later cases. In fact, the court did not even address the requirements *Petzoldt* listed as alternatives to an opening net worth.

The problem facing the Commissioner where criminal activity of the type involved in drug trafficking is concerned, is that the activity is characterized by cash transactions and a lack of records, or concealed or deceptive records. Attempting to establish an opening net worth or quantify sources of nontaxable funds, or other such accounting constructs, for drug traffickers who specialize in secrecy, deception, and evasion, is not only a daunting burden, it is likely to be so wildly inaccurate through no fault of the Commissioner as to be of little real probative value. The situation is even more aggravated where, as here, the taxpayer is uncooperative.

Regardless, it is not necessary for us to decide whether, in a case like the one before us, the Commissioner is required to do more than reasonably link the taxpayer to specific expenditures in order for a notice of deficiency based on those expenditures to retain the presumption of correctness. The Commissioner produced evidence, which, taken as a whole, sufficiently connected Erickson to a likely source of income, the drug trade, to explain possession of enough money to purchase the marijuana. *See Petzoldt v. Commissioner,* 92 T.C. at 696. Furthermore, the Commissioner introduced evidence of Erickson's bank accounts showing insufficient assets on hand at the beginning of 1983 to account for $75,000 in cash and cash expenditures, much less an amount necessary to purchase more than a ton of marijuana. Thus, the most logical source for nontaxable funds was ruled out. *See id.* The evidence introduced by the Commissioner was enough to satisfy accepted variations of the cash expenditures method. We agree with those courts which have held that the Commissioner is not obliged to establish a net worth when employing the cash expenditures method for notices of deficiency in civil tax cases.

There was a reasonable foundation for the notice of deficiency in this case and it was entitled to a presumption of correctness. Furthermore, the Commissioner did not just rely upon the notice but introduced evidence in support of his position. The source of the funds necessary to acquire the assets in question, or information showing purchase and ownership by another individual, were matters peculiarly within Erickson's knowledge. We decline to reward a taxpayer who, like Erickson, fails to file a return, keep adequate books or records, provide leads or other information from which the Internal Revenue Service can make an independent determination of his actual tax liability, or present competent, persuasive evidence in court.

This court has stated that in unreported income cases, the taxpayer bears the burden of proving that the Commissioner's

determination is arbitrary or erroneous. *Jones v. Commissioner*, 903 F.2d 1301, 1304 (10th Cir.1990); *Ruidoso Racing Assn., Inc. v. Commissioner*, 476 F.2d 502, 507–08 (10th Cir.1973). The Tax Court's finding that the taxpayer has failed to carry his burden of proof is factual and may not be set aside unless clearly erroneous. *See Marathon Oil Co. v. Commissioner*, 838 F.2d 1114 (10th Cir.1987); *Dolese v. Commissioner*, 811 F.2d 543 (10th Cir.1987); *Smith v. Commissioner*, 800 F.2d 930, 934 (9th Cir.1986). In the present case, the Tax Court's determination that Erickson failed to carry his burden of proof is well substantiated by the record.

## CONCLUSION

In many respects this is a case which has been searching for a coherent legal theory in the wrong places. In testing the minimum requirements for a notice of deficiency the emphasis should not be on the technical requirements of various income reconstruction methods. There is only one rule, that there be some rational underpinning. Establishing a minimal evidentiary foundation can be done in a variety of ways, and no rigid formalisms are required. The Commissioner has established a rational basis for the notice of deficiency in this case, thus preserving the presumption of correctness. The taxpayer offered no evidence to overcome that presumption. Accordingly, the judgment of the Tax Court in favor of the Commissioner is AFFIRMED.