951 F.2d 1259
 92-1 USTC P 50,030
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ed J. HAGEN; Martha Jo Hagen, Petitioners-Appellants,
and
Hagen Investments, Inc., Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 90-9010.
 United States Court of Appeals, Tenth Circuit.
 Dec. 26, 1991.
 
 Before McKAY, Chief Judge, SEYMOUR and EBEL, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 In 1976, the Commissioner of Internal Revenue issued statutory notices of deficiency to Ed and Martha Jo Hagen (Petitioners) for tax years 1964-1966 and 1968-1971. The Commissioner also issued notices of deficiency to Hagen Investments, Inc., an Oklahoma corporation, for tax years 1968-1971. All three taxpayers sought review of the Commissioner's determinations in the Tax Court. The Tax Court consolidated the proceedings involving the individuals and the corporation, and in 1990 issued a decision determining that all three taxpayers owed additional taxes, as well as penalties and interest, for the tax years at issue. Petitioners appeal.
 
 
 4
 The first issue we must address is which parties are properly before us. Ed Hagen filed a pro se Notice of Appeal from the Tax Court's decision purportedly on behalf of all three taxpayers. Martha Jo Hagen subsequently filed a motion to add her name to the Notice of Appeal and to the briefs filed by Ed Hagen. We hereby grant the motion and treat the appeal as being maintained on behalf of both individuals, pro se. But see Church v. Commissioner, 810 F.2d 19, 20 (2d Cir.1987) (pro se notice of appeal filed by only one spouse who was not attorney not effective as to other spouse). The corporation, however, can appear only through counsel. DeVilliers v. Atlas Corp., 360 F.2d 292, 294 (10th Cir.1966). Because neither of the Hagens is an attorney, neither can represent the corporation. Therefore, we must dismiss the appeal as to the corporation.
 
 
 5
 During the years at issue, Ed Hagen was engaged in business as a registered securities broker-dealer. He operated the business as a sole proprietorship under the name of Hagen Investments during the tax years 1964-1966. In early 1967, he incorporated the business, and Hagen Investments, Inc., became the registered broker-dealer.
 
 
 6
 The Commissioner determined that Petitioners' books and records for the years 1964-1966 were incomplete and unreliable. He therefore used primarily the bank deposits method to determine the taxpayers' taxable income for those tax years. The Commissioner categorized transactions relating to twenty-one bank accounts that he determined Petitioners controlled during the three-year period. The Commissioner also determined taxable income in part through use of the specific items method. The Commissioner likewise determined that Petitioners' books and records were inadequate for the years 1968-1971. The Commissioner therefore used third-party records and indirect methods to determine taxable income in those years.
 
 
 7
 Petitioners assert a myriad of arguments on appeal regarding the Commissioner's reconstruction of their taxable income. With virtually no assistance from the Commissioner, whose brief on appeal was of little help, we have carefully reviewed Petitioners' arguments, the record on appeal, and the pertinent law, and we reject all of Petitioners' arguments except those discussed below.
 
 
 8
 I. Method of calculating cost of goods sold.
 
 
 9
 Petitioners challenge the reasonableness of the method used by the Commissioner to reconstruct the income of the business. They contend that the bank deposits method is unreliable when applied to the business of a securities broker-dealer. Specifically, Petitioners argue that the Commissioner incorrectly postponed accounting for short sales, and used opening and closing inventory figures to determine costs of goods sold without considering that the inventories had been marked to market in each month.
 
 
 10
 Petitioners reported on a calendar-year basis. The Commissioner determined, and the Tax Court agreed, that inventories were a material income-producing factor in Petitioners' business and, therefore, Petitioners were required to use the accrual method for their business accounting. See Treas.Reg. § 1.471-1; Rev.Rul. 74-226, 1974-1 C.B. 119. In reconstructing Petitioners' income, therefore, the Commissioner adjusted the business's income and expenses to reflect proper accounting on the accrual method.
 
 
 11
 The Commissioner excluded from gross receipts in a given tax year those short sales that were not covered by the end of the tax year. The Commissioner then accounted for the short sales in the next year, when they were covered. The Commissioner reduced the amounts classified by Petitioners as securities sales by the amount of the short sales. See Brief for the Appellee at 6.
 
 
 12
 Petitioners contend that the Commissioner's method failed to recognize that Petitioners could not wait until the next tax year, when the short sales were covered, to report the profit or loss on a short sale for tax purposes. Instead, they had to value the short sale at the market's asked price and adjust the value of their inventory accordingly. Petitioners then reported income and expenses based on the adjusted inventory value. As we understand Petitioners' argument, the problem with postponing accounting for short sales is tied to the way the Commissioner determined cost of goods sold.
 
 
 13
 The Tax Court described the method used by the Commissioner to reconstruct cost of goods sold for 1964-1966 as follows:
 
 
 14
 His overall system was to (a) adopt Hagen Investments' closing inventory figures for the 1963, 1964, and 1965 business years as the correct opening inventory figures for 1964, 1965 and 1966, respectively; (b) add to opening inventory the cost of inventory purchases in 1964, 1965 and 1966, derived from respondent's check classifications, to arrive at goods available for sale; and (c) subtract from goods available for sale Hagen Investments' own closing inventory figures for 1964, 1965 and 1966.
 
 
 15
 T.C. Memo 1989-473 at 37-38. The Tax Court noted that Hagen Investments had valued closing inventories for SEC reporting purposes. The Tax Court also noted that Hagen Investments had valued the inventories for 1963 and 1964 at cost, but had valued the inventories for 1965 and 1966 at the lower of cost or market. Because Petitioners had not obtained permission from the Commissioner to change the way they valued their inventories, see I.R.C. § 446(e) (1954),[1] the Commissioner also changed the values of the inventories for 1965 and 1966 to cost.
 
 
 16
 Petitioners argue that the Commissioner's method essentially mixed apples and oranges because he used opening and closing inventory figures that had already been adjusted under the SEC regulations but then added to and subtracted from those adjusted figures the actual costs of securities purchased during a year (excluding short sales not covered at the end of the year).
 
 
 17
 Petitioners set forth the following example of the problem in their Brief filed in Tax Court.
 
 
 18
 If Hagen Investments owned 1000 shares of Leeway at the end of 1965 at an $11.00 bid price, we would show that as an $11,000.00 inventory position. We also assume that this stock was bought at $13.00 per share. In this instance respondent would show $2,000.00 more income in 1965 than petitioner does. [Because the Commissioner changed inventory to actual cost.] In January 1966 the 1000 Leeway are sold at 14. Petitioners will show a $3,000.00 profit over their adjusted base, which will contribute to their annual income for 1966. At the end of 1966 respondent shows the excess income he figured, following his method, but does not reduce by $2,000.00 the excess profit he figured for petitioner in 1966 which respondent has already included by anticipation in 1965 by disallowing the downward inventory adjustment. The same holds true for short positions, see transcript please.
 
 
 19
 Brief at 3.
 
 
 20
 The only response the Commissioner makes to these arguments is that "[t]axpayer fails to appreciate that short sales are included once the transaction is completed. Thus, short sales are not altogether excluded; the sales are included in the next year's income figures, assuming the sale is completed." Brief for the Appellee at 6 n. 8. This response does not address Petitioners' arguments.
 
 
 21
 Based upon his reconstruction of cost of goods sold, the Commissioner determined that Petitioners overstated the business's cost of goods sold by $18,078.76 in 1964, understated the cost by $41,570.77 in 1965, and overstated the cost by $221,378.61 in 1966. See Id. at 39-40. The Commissioner's deficiency determination is entitled to a presumption of correctness, and the taxpayer has the burden of overcoming that presumption. Erickson v. Commissioner, 937 F.2d 1548, 1551 (10th Cir.1991). Nonetheless, "the presumption of correctness 'is only as strong as its rational underpinnings. Where it lacks a rational basis the presumption evaporates.' Some reasonable foundation for the assessment is necessary to preserve the presumption of correctness." Id. (quoting Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir.1981)).
 
 
 22
 Petitioners have made a legitimate challenge to the reasonableness of the method used by the Commissioner to reconstruct taxable income of the business, and the Commissioner has failed to address this challenge adequately in his brief on appeal. Therefore, we must remand this issue to the Tax Court for further consideration. If the Commissioner cannot adequately address Petitioners' arguments and establish a rational basis for the method he used to determine the cost of goods sold for the tax years 1964-1966, the Tax Court will have to recalculate the tax owed for those years.
 
 
 23
 II. Home office expense.
 
 
 24
 Petitioners did not take any deduction on their tax returns for the office in their home, but in reconstructing their taxable income for 1968-1971, the Commissioner included a deduction of $229.72 per year for home office expense. Petitioners dispute the amount of expense the Commissioner permitted them to deduct.
 
 
 25
 The Tax Court found that "consider[ing] the corporation's expenditures relating to the property (which are treated as distributions ...), and consider[ing] as well the level of business activity carried on at the subject property, the $229.72 expense for each year strikes us as low." T.C. Memo 1989-473 at 82. The Tax Court recognized that under the Cohan[2] rule, "[i]f part of an expenditure is made for a deductible purpose and the record contains sufficient evidence for us to make a reasonable allocation, we will do so." Id. at 157. The Tax Court ultimately sustained the Commissioner's determination, however, based on its conclusion that "there is no reasonable basis for making allocations on this record." Id.
 
 The Tax Court explained:
 
 26
 Some of the corporation's expenditures--for repairs and maintenance, utilities, insurance and office supplies--might have conceivably been prorated, but testimony relating to the amount of the structure used for business purposes is meager and uninformative. Moreover, we are unable to determine the very purposes for which many of the expenditures were made. Under such circumstances, a deduction based on the Cohan rule would be "unguided largess."
 
 
 27
 Id. (quoting Epp v. Commissioner, 78 T.C. 801, 807 (1982)).
 
 
 28
 The Tax Court's conclusions are problematic. Contrary to the Tax Court's statement, the testimony relating to the business use of Petitioners' residence was quite specific. Ed Hagen testified that from June 1, 1965 until October of 1968, all of the ground floor of their residence, which consisted of 1820 square feet (52' X 35') and had a separate entrance from the street and separate mail access, was used for business purposes. Rec.Vol. IV at 1257-58. He also testified that during the same period, the entire garage, which consisted of 682 square feet (31' X 22'), was used for business purposes. Id. at 1258. Ed Hagen testified that the remaining two floors of the residence were used primarily for residential purposes, though office phones extended to each floor. He further testified to the square footage of each floor and the total square footage of the house, according to a blueprint for the house's construction. Id.
 
 
 29
 Ed Hagen testified that after October of 1968, when the trading and retail, and eventually bookkeeping, departments were moved to the May-Ex Building, the business use of the residence dropped to 1820 square feet. Id. at 1258-59. Both Martha Jo Hagen and Fern Morris testified about the business use of the residence in general.
 
 
 30
 In 1962, the IRS issued a Revenue Ruling setting forth guidelines for determining the amount of deduction that an individual is allowed for expenses attributable to an office in his home. Rev.Rul. 62-180, 1962-2 C.B. 52. According to the Revenue Ruling, the cost of repainting or repairing rooms used exclusively for business purposes would be fully deductible, and a pro rata portion of the cost of paying rent, utilities, taxes, or mortgage interest, and of painting the outside of the residence or repairing the roof, would be deductible. Id.
 
 The Revenue Ruling further states:
 
 31
 [I]n making an allocation of expenses, it would, if the circumstances warrant, be proper to compare the number of rooms or square feet of space devoted to a business purpose to the total number of rooms or square feet in the residence and apply the ratio thus arrived at to the total of each of the expenses properly attributable to the use of part of the residence for business purposes. Such methods of allocation are not the only methods which may be made. Any other method which is reasonable under the circumstances will be acceptable.
 
 
 32
 Id.
 
 
 33
 Thus, absent a finding that Ed Hagen's testimony regarding the percentage of square footage used for business purposes versus the total square footage of the residence was not credible, the Tax Court had sufficient evidence before it from which it could reasonably allocate expenses relating to the business use of the residence. On remand, the Tax Court should recalculate the home office expense allowed Petitioners.
 
 
 34
 III. Constructive dividends.
 
 
 35
 The largest item of income for the tax years 1968-1971 that Petitioners dispute is that attributable to the Commissioner's determination, which the Tax Court approved, that Petitioners had constructive dividends from Hagen Investments, Inc. and Capitol Car Care, Inc. The constructive dividends resulted from a variety of expenses the corporations paid that the Commissioner disallowed as legitimate business deductions and attributed to Petitioners as constructive dividends.
 
 
 36
 The portion of a distribution of property by a corporation to its shareholder that constitutes a dividend is part of a taxpayer's gross income. I.R.C. § 301(a), (c)(1). "A constructive dividend is paid when a corporation confers an economic benefit on a stockholder without expectation of repayment." Wortham Mach. Co. v. United States, 521 F.2d 160, 164 (10th Cir.1975).
 
 
 37
 "The test for constructive dividends is twofold: the expenses must be nondeductible to the corporation; and they must represent some economic gain, benefit or income to the owner-taxpayer." Meridian Wood Prods. Co. v. United States, 725 F.2d 1183, 1191 (9th Cir.1984). "Not every corporate expenditure incidentally conferring economic benefit on a shareholder is a constructive dividend. Of determinative significance is whether the 'distribution was primarily for shareholder benefit.' " Crosby v. United States, 496 F.2d 1384, 1388-89 (5th Cir.1974) (quoting Sammons v. Commissioner, 472 F.2d 449, 452 (5th Cir.1972)). Whether an expenditure is a constructive dividend is a question of fact subject to the clearly erroneous standard of review. Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1215 (5th Cir.1978).
 
 
 38
 On appeal, Petitioners argue that the expenditures with which they were taxed were legitimate corporate expenses. Because the corporation is not a party to this appeal, the propriety of disallowing the expense deductions to the corporation is not at issue as far as the corporation is concerned. Nonetheless, whether the expenditures were legitimate business expenses has some bearing on whether they were made primarily for Petitioners' benefit.
 
 
 39
 We have reviewed all the expenditures the Tax Court treated as constructive dividends. We conclude that the Tax Court did not err in treating those expenditures as constructive dividends with the exception of a few items in the category of maintenance and repair discussed below.
 
 
 40
 Both Petitioners testified that all the rooms in the basement of their residence, as well as a three-room garage apartment, were used as office space for Hagen Investments, Inc. and the other businesses in which Petitioners were involved. Rec.Vol. V at 1741-42; Rec.Vol. IV at 1257-58. This testimony was corroborated by Fern Morris, who was the bookkeeper for a number of years. Rec.Vol. V at 1754-55, 1759-60. Several of the invoices Petitioners introduced into evidence specifically indicated that they were for repairs, maintenance, or materials for the office space. These are as follows:
 
 
 41
 1. May 15, 1968 contract with J.W. Abbott (with back up invoices for materials) to "paint outside trim 2 coats in and under breezeway and garage, calk and glaze where necessary also sand and remove loose paint where necessary," which also provided that the job was to be done at the rate of $4.00 per hour per man plus material plus 10% at contractor's cost, not to exceed $1050.00. Rec.Vol. XVII, Ex. 160.
 
 
 42
 2. May 24, 1968 invoice from Enlow Plumbing for $142.25 to check for water leak in basement, repair closet tank, install new shower valve, and connect dryer. Id. at Ex. 164.
 
 
 43
 3. June 17, 1968 invoice from Wolfenbarger Electric Co. for $15.30 for a service call on lighting fixture, which listed the job address as "office." Id. at Ex. 162.
 
 
 44
 4. June 25, 1968 invoice from The Hessemer Co. for service on two air conditioners, separately designated as the office unit and the house unit. Parts totalling $3.00 were installed on each of the two units and total labor on the units was $15.50. The total bill was $22.68 with tax. Id.
 
 
 45
 5. November 12, 1968 invoice from Enlow Plumbing for $43.67 to assemble and connect fireplace heater and rerun piping in downstairs fireplace, as well as clear tub drain and adjust central heating burners. Id. at Ex. 164. Martha Jo Hagen testified that the only fireplace in the house was in the office. Rec.Vol. V at 1749.
 
 
 46
 6. November 20, 1968 invoice from Lillian Strickler for $49.85 for a spark arrester (fireplace screen). Rec.Vol. XVII, Ex. 167.
 
 
 47
 7. January 20, 1969 invoice from R.K. Black, Inc. ("Authorized 3M Brand Business Products Center") for $38.63. The invoice was addressed to Hagen Investments, 3022 N.W. Expressway, May-Ex Bldg., Room 301, Oklahoma City, Oklahoma, and described the work done as "cleaned and serviced machine," "replaced parts listed," "made adjustment for temp.," and "cleaned and waxed cover." The parts listed were 28 lamps, 1 belt, and 1 platen pad. Id. at Ex. 168. Martha Jo Hagen testified that this invoice was for service on the copy machine, Rec.Vol. V at 1750-51, and the evidence showed that some of the offices of Hagen Investments, Inc. moved to the May-Ex building in 1968, Rec.Vol. IV at 1258; Rec.Vol. V at 1760.
 
 
 48
 To the extent that the materials and services listed in the invoices were for the business premises and business equipment, the corporation's payment for those materials and services was not primarily for Petitioner's personal benefit. Nonetheless, the Commissioner treated all the payments as constructive dividends to Petitioners. Rec.Vol. XI, Ex. LL at 10, 11, 12. Rather than approving the Commissioner's determination with respect to these items, the Tax Court should have applied the Cohan rule and allowed an appropriate amount as a business expense, with a concomitant reduction in the amount treated as a constructive dividend to Petitioners. On remand, the Tax Court should recalculate the amount of constructive dividends attributed to Petitioners as income.
 
 
 49
 IV. Ad valorem taxes.
 
 
 50
 Finally, Petitioners argue that the Commissioner failed to deduct from their taxable income the ad valorem taxes they paid on their residence for the years 1968-1971. Section 164 of the Internal Revenue Code provides that state and local real property taxes are deductible for the tax year in which they were paid or accrued. It does not appear from the record, however, that the Commissioner allowed Petitioners a deduction for the property taxes they paid on their residence, though he did allow them a deduction for the interest they paid on their mortgage.[3] This oversight should be corrected on remand and Petitioners allowed a deduction for any ad valorem taxes they paid.
 
 V. CONCLUSION
 
 51
 The decision of the United States Tax Court is AFFIRMED in part, REVERSED in part, and the action is REMANDED for further proceedings consistent with this order and judgment. This appeal is DISMISSED as to Hagen Investments, Inc., and the motion of Petitioner Martha Jo Hagen to add her signature to the Notice of Appeal and briefs filed by Petitioner Ed Hagen is GRANTED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 All citations to the Internal Revenue Code are to the 1954 version in effect during the tax years at issue
 
 
 [2]
 Cohan v. Commissioner, 39 F.2d 540 (2d Cir.1930)
 
 
 [3]
 Hagen Investments, Inc. made all the mortgage payments relating to Petitioners' residence, including principal, interest, insurance, and property tax. The Commissioner treated these payments as constructive dividends to Petitioners, but then said he was allowing them to take the appropriate deductions for the payments