MAGDA GARCIA-WRIGHT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garcia-Wright v. Commissioner
Docket No. 28953-90
United States Tax Court
T.C. Memo 1993-439; 1993 Tax Ct. Memo LEXIS 450; 66 T.C.M. (CCH) 816; September 21, 1993, Filed *450 Decision will be entered pursuant to Rule 155. For petitioner: Judith L. Zabel. For respondent: Thomas Eagan. BUCKLEY
BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: This case was heard pursuant to section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's Federal income tax for taxable year 1983, together with additions to tax, in the following amounts: Additions to tax
Sec.
Sec.
Sec.
Sec. Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6654 1983
$ 6,689
$ 1,672
$ 334
[1]
$ 410
The issues for decision are: (1) Whether petitioner had unreported taxable income during 1983 in the amount of $ 24,600 as determined by respondent by the source and application of funds method of proof; (2) *451 whether petitioner's taxable income for 1983 is subject to the self-employment tax; (3) whether petitioner is liable for the failure to file penalty under section 6651(a)(1); (4) whether petitioner is liable for negligence penalties; and (5) whether petitioner is liable for failure to pay estimated tax. Some of the facts have been stipulated, and they, together with exhibits attached to the stipulation, are so found. Petitioner resided at Albuquerque, New Mexico, when she timely filed her petition herein. Petitioner Magda Garcia-Wright did not file Individual Income Tax Returns, Forms 1040 or 1040A, for either of the taxable years 1982 and 1983. Petitioner had reported taxable income of $ 5,325, $ 5,825, $ 1,475, and $ 5,128 on her returns for taxable years 1978, 1979, 1980, and 1981, respectively. Petitioner earned this reported income in prior years as wages from employment in fast food restaurants and bartending. Petitioner graduated from high school in 1972 and from college in 1979. She worked part time during the 7 years it took her to receive her college degree. On October 6, 1983, petitioner purchased a house and lot at 1907 Griegos N.W. in Albuquerque for $ 35,000. *452 The house and lot at 1907 Griegos adjoined a home at 1903 Griegos N.W. which petitioner had owned and resided in since 1973. Petitioner continued to own the 1903 Griegos home after her purchase of the 1907 Griegos house and lot. Petitioner made a $ 20,000 downpayment on the purchase of the 1907 Griegos house and lot which she paid in cash. Also in 1983, petitioner made two $ 300 monthly payments on the 1907 Griegos property. The parties have stipulated that petitioner incurred personal living expenses of at least $ 4,000 in 1983. Petitioner claims she paid all these sums while she was unemployed during 1983 and had no income to report. Petitioner claims further that her sources of funds in 1983 were loans from family and from her own savings. Petitioner has not produced any documentation of such loans or savings. Respondent determined that petitioner had taxable income during 1983 of $ 24,600 based on the source and applications method of reconstructing income. Taxpayers must keep records adequate to determine their income tax liability. Sec. 6001. In the absence of adequate books and records, it is well established that the Commissioner has the authority to compute the *453 income of a taxpayer by whatever method, in the opinion of the Commissioner, clearly reflects income. Sec. 446(b); sec. 1.446-1(b)(1), Income Tax Regs.; Holland v. United States348 U.S. 121 (1954). The reconstruction need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). Reconstruction by the source and applications method of proof, often termed the cash expenditures method, is accomplished by comparing known cash expenditures with known receipts. If a taxpayers's expenditures for a given year exceed reported income and the source of funds is unexplained, the excess expenditures represent unreported income. The method is based on the assumption that the amount by which a taxpayer's application of funds during a taxable period exceeds her reported source of funds for that same period has taxable origins. The taxpayer may show the excess application is attributable to such nontaxable items as loans, gifts, or cash on hand at the beginning of the period. Cheesman v. Commissioner, T.C. Memo. 1990-350. The source *454 and applications method of computing income is clearly an acceptable method. Llorente v. Commissioner, 74 T.C. 260, 267 (1980), affd. in part and revd. in part 649 F.2d 152 (2d Cir. 1981). In this case, respondent determined that petitioner made expenditures in 1983 of at least $ 24,600. It is undisputed that petitioner spent $ 20,000 on a down payment, $ 600 in monthly payments, and at least $ 4,000 for personal living expenses. Since petitioner did not report any receipts of income for 1983, respondent determined that petitioner had gross income of $ 24,600. It is well established that the Commissioner's deficiency determination in a civil case is presumptively correct, and that the taxpayer bears the burden of proving that respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). However, the presumption of correctness "is only as strong as its rational underpinnings. Where it lacks a rational basis the presumption evaporates." Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir. 1981). Here, the Commissioner's basis *455 for her determination is the fact that petitioner made a cash outlay of $ 20,000 for a downpayment in 1983, followed by two $ 300 monthly payments, in a year where petitioner did not report any income. In addition, petitioner did not file a return for taxable year 1982, while she had filed returns in previous years. Respondent need not connect petitioner to a source of income such as an activity or business in order to have a rational basis underlying the determination. It is sufficient for respondent to connect the taxpayer to possession of liquid assets which were likely utilized in incurring the expenditures. Schad v. Commissioner, 87 T.C. 609 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987); Tokarski v. Commissioner, 87 T.C. 74, 76 (1986). The view of the United States Court of Appeals for the Tenth Circuit, to which an appeal in this case would lie, is that where the Commissioner demonstrates sufficient minimal facts to show an ownership interest in assets possessed by a taxpayer, the presumption of correctness remains with the notice of deficiency and the taxpayer *456 bears the burden of satisfactorily explaining how she came to possess the liquid assets and to demonstrate why the assets do not represent taxable income in the year in question. See Erickson v. Commissioner, 937 F.2d 1548, 1551-1552 (10th Cir. 1991), affg. T.C. Memo. 1989-552. The Erickson case also makes clear that the Commissioner is not obliged to establish the taxpayer's opening and closing net worth before using the cash expenditures method of reconstructing income. We find that respondent's determination was not arbitrary; thus petitioner bears the burden of coming forward with sufficient evidence to overcome the presumption of correctness. Accordingly, we consider petitioner's explanation as to why she did not report any 1983 income and as to how she acquired the use of $ 20,000 in cash used for a down payment. Petitioner argues that she did not file a return for 1983 because she had no income to report. Instead of earning a salary, petitioner maintains, she spent her time helping her boyfriend (now husband) run errands relating to a restaurant he started building in 1982. According to petitioner, the sources *457 of her $ 20,000 cash outlay were a $ 10,000 loan from her grandmother in 1982, a $ 5,000 loan from her cousin in 1983, and $ 5,000 from her private savings of tip money from previous years. Petitioner's boyfriend also allegedly made small contributions to her expenses in 1983. Petitioner asserts that while the $ 5,000 from her cousin was in the form of a cashier's check, the other $ 15,000 was cash that she never deposited into a bank account. Petitioner claims that prior to buying the 1907 Griegos property, which was on the west side of her house, she was very interested in buying a lot on the other side of her house, but was unable to persuade Mr. Olquin, the owner, to sell it to her. In the hope of changing his mind, petitioner kept $ 15,000 cash on hand so that she could show Olquin the money and lure him into selling. Putting the cash in the bank would have made access to the money more difficult. Petitioner claims that after keeping the cash in her house for a while, she grew frightened that her neighborhood was not the kind of place where she could keep a large sum of money, and she put the cash in a safe in her mother's house. Petitioner admits never showing the cash *458 to Mr. Olquin, and he never sold the property to petitioner. We find that petitioner has established that she borrowed $ 10,000 from her grandmother. Petitioner's grandmother died in 1982 at the age of 92, and apart from petitioner no one alive at the time of trial had any personal knowledge of such loan. While the parties stipulate that the funds expended by petitioner in 1983 did not come from an inheritance, petitioner's grandmother left written instructions that she did not want debts due to her to be collected following her death. There is sufficient evidence in the record to show that petitioner already had possession of this $ 10,000 prior to 1983 and that this sum was received by way of loan, in conjunction with a testamentary forgiveness of indebtedness. Since we find $ 10,000 to have originated from nontaxable sources, we hold that respondent's determination of petitioner's unreported income must be decreased by $ 10,000. However, petitioner failed to overcome her burden of proving that the remaining $ 14,600 of expenditures she made in 1983 originated from nontaxable sources. Petitioner did not file a return in 1982 or 1983, allegedly because she had no job and no *459 income. In the years prior to 1982, petitioner reported very little income, yet petitioner made a very substantial capital outlay in 1983. Petitioner would have us believe that the reason she has no records explaining her possession of the money she claims she had in 1983 is because it was in cash, stashed in a safe for many months so that she could show it to Mr. Olquin. Petitioner did not try to explain how she met her everyday living expenses without having any income in 1982 or 1983. We do not find petitioner's story credible. The only scintilla of evidence petitioner brought forth to substantiate the existence of any loans from her cousin were letters, of suspect reliability, purporting to be acknowledgments from her cousin that he loaned petitioner $ 5,000. Petitioner has not demonstrated that she had cash savings of $ 5,000, or of any amount, which she used to make her 1983 expenditures. Petitioner's testimony is self-serving, incomplete, and at times contradictory, and we sustain respondent's determination that petitioner had unreported taxable income in 1983. Pursuant to our finding that $ 10,000 originated from a loan from petitioner's grandmother, however, we sustain *460 respondent's determination of petitioner's unreported income only to the extent of $ 14,600. Respondent also determined that the unreported income is subject to self-employment tax under section 1401. Petitioner has failed to prove that $ 14,600 of unreported income in 1983 was from wages, gifts, loans, inheritance, or any other source not ordinarily subject to self-employment tax. Accordingly, we sustain respondent's determination on this issue, also to the extent of $ 14,600. We next consider whether petitioner is liable for an addition to tax under section 6651(a) for failing to file a tax return. Respondent's addition to tax is presumptively correct, unless petitioner can show that her failure to file a tax return is due to reasonable cause rather than to willful neglect. Petitioner argues that she did not file because she had no income to report. We hold that petitioner did have income to report in 1983 and had no reasonable cause to refrain from filing a tax return. We sustain respondent's determination on this issue. We next consider whether petitioner is liable for an addition to tax for failure to pay estimated tax under section 6654. Petitioner failed to estimated *461 tax in 1983 for $ 14,600 in income. Thus, petitioner is liable for the addition to tax imposed by section 6654. Respondent also determined that petitioner is liable for additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a). Negligence under section 6653 means lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). We find that petitioner's failure to file a return without reasonable cause when she was under a known legal duty to file constitutes negligence. Emmons v. Commissioner, 92 T.C. 342 (1989), affd. 898 F.2d 50 (5th Cir. 1990). Further, we conclude that the entire underpayment of tax resulting from failure to report $ 14,600 in income is due to negligence. Decision will be entered pursuant to Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue; Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the deficiency.↩