T.C. Memo. 2000-152


UNITED STATES TAX COURT


MIKE AMINI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6977-98.                    Filed May 5, 2000.


<u>John R. Riley</u>, for petitioner.

<u>David W. Sorensen</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income taxes, additions to tax, and penalties as follows:

| | | Additions to Tax and Penalties | | | |
|------|------------|-------------------|-------------------|----------------|-----------|
| Year | Deficiency | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6653(b)(1) | Sec. 6663 |
| 1986 | $25,086 | $18,815 | * | --- | --- |
| 1987 | 20,122 | 15,092 | * | --- | --- |
| 1988 | 26,970 | --- | --- | $20,228 | --- |
| 1989 | 44,426 | --- | --- | --- | $33,320 |
| 1990 | 62,817 | --- | --- | --- | 47,113 |
| 1991 | 38,498 | --- | --- | --- | 28,874 |

* Amounts to be calculated at 50 percent of interest
due on portion of underpayments attributable to fraud.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision involve the amount of embezzled funds that should be charged as gross income to petitioner and whether the fraud additions to tax and fraud-related penalties apply.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

When the petition was filed, petitioner resided in South Jordan, Utah. From 1984 until terminated in 1991, petitioner was employed as a pharmacist at the outpatient pharmacy (OPP) at LDS Hospital in Salt Lake City, Utah.

The procedures for the "closing" each day of the cash register by the OPP pharmacists consisted of the following steps:

(1) The cash register was to be cleared for the day by printing from the register a report of total sales for the OPP;

(2) The cash and the checks were to be removed from the cash register drawer;

(3) The cash was to be counted;

(4) An adding machine tape was to be printed reflecting the total amount of the checks;

(5) The total amount of the cash and the checks was to be calculated;

(6) The amount of the total sales was to be entered into a written log book maintained by the OPP;

(7) The report of total sales, the cash, the checks, and the adding machine tape were to be placed in a deposit bag that was to be secured overnight in a safe located in the OPP; and

(8) $200 in cash was to be left in the OPP cash register drawer for the next day's business.

The next morning, an OPP pharmacist would retrieve the deposit bag from the OPP safe and would arrange for its delivery to the hospital's main cashier where the cash and the checks in the deposit bag were to be accounted for by the hospital.

On days when he worked at the OPP, petitioner consistently volunteered to perform the cash register closing procedures described above. From 1986 through 1991, however, petitioner embezzled cash from the OPP by modifying the above cash register closing procedures as follows:

(1) Before closing the OPP for the day, petitioner would take from the OPP cash register drawer either cash or a

check which he would cash at the hospital's main cashier;

(2) Petitioner would keep and use for his own purposes the cash obtained per (1) above;

(3) Petitioner would remove from the cash register drawer the remaining cash and checks reflecting the balance of the OPP sales for the day;

(4) Petitioner would clear the cash register for the day by printing from the register a report of total sales for the OPP, and petitioner would then discard this report in the trash;

(5) Petitioner would print an adding machine tape reflecting the sum of the remaining checks in the register;

(6) Petitioner would calculate the total amount of the remaining cash and checks in the register;

(7) Petitioner would enter a fabricated total sales figure for the day into the written log book reflecting the total amount of the remaining cash and checks;

(8) Petitioner would print an adding machine tape reflecting the fabricated total OPP sales figure for the day;

(9) Petitioner would place the remaining cash and checks and the adding machine tapes reflecting the checks and the fabricated total sales in a deposit bag that was secured overnight in the OPP safe; and

(10) Petitioner would leave $200 in cash in the OPP cash register drawer for the next day's business.

From 1986 through 1991, of the 1,288 days petitioner closed the OPP cash register, 1,101 of the original daily sales reports that were to be printed by the cash register are missing.

In August of 1991, another pharmacist became suspicious of petitioner's conduct in closing the OPP cash register and

informed hospital administrators of possible irregularities.
Internal auditors for the hospital commenced an investigation and
uncovered petitioner's embezzlement.  Confronted with the
evidence from the investigation, petitioner admitted embezzling
from the OPP $25,000 to $30,000.

Unknown to petitioner, through an internal control
mechanism, the OPP cash register maintained an internal running
or cumulative sales figure that did not reset at the end of each
day.  By subtracting from these correct running total sales
figures maintained by the cash register the daily total sales
figures written in the log book and an average figure for daily
returns and void transactions, internal auditors from the
hospital were able to calculate the total amount petitioner
embezzled each year from the OPP.[1]

The schedule below reflects, for each year in issue, the
total amount petitioner embezzled as calculated by the hospital's

---

[1]  We note that the hospital's internal auditors were able to
calculate only a close estimate of the amount of actual funds
petitioner embezzled.  Because petitioner discarded many of the
actual daily total sales reports printed by the cash register,
internal auditors had no way of reconstructing for each day the
precise amounts of refunds or void transactions.  The internal
auditors, however, were able to estimate the refunds and void
transactions for each day by averaging for each day the amounts
of refunds and void transactions for the days for which the
actual cash register daily sales reports were available.

internal auditors, and the total amount of unexplained cash deposits made into bank accounts owned by petitioner and his wife:

| Year | Hospital's Calculation of Total Amount Embezzled by Petitioner | Unexplained Cash Deposits to Petitioner and His Wife's Bank Accounts |
|------|------|------|
| 1986 | $ 42,105 | $ 63,446 |
| 1987 | 72,727 | 56,681 |
| 1988 | 105,968 | 86,383 |
| 1989 | 157,396 | 138,294 |
| 1990 | 228,890 | 203,133 |
| 1991 | 193,187 | 120,846 |
| Total | $800,273 | $668,783 |

For the years in issue, petitioner and his wife timely filed joint Federal income tax returns reporting their wages, interest, and dividend income. For the years in issue, however, petitioner and his wife did not report on their joint Federal income tax returns any of the funds petitioner embezzled from the OPP.

In the notice of deficiency for the years in issue, utilizing for each year the total of unexplained cash deposits into petitioner and his wife's bank accounts, respondent determined that petitioner and his wife received a cumulative total of $668,783 in unreported embezzlement income from the OPP. Respondent also determined that petitioner and his wife were both liable for the fraud additions to tax and penalties and that fraud was attributable to the entire resulting underreporting of income. Petitioner's wife has filed a separate petition in this Court (docket No. 6978-98) which is awaiting our decision herein.

On October 27, 1993, after a criminal investigation by the U.S. Attorney's Office and by respondent (and after seizure of bank accounts, investment holdings, and other assets owned by petitioner and his wife totaling $511,788), petitioner was indicted and pleaded guilty to theft and to filing a false or fraudulent Federal income tax return for 1990. Under the plea agreement, petitioner agreed (for purposes of sentencing only and without prejudice to claim a different amount in a civil lawsuit with LDS Hospital) to an order of restitution in the amount of $668,783 relating to the above embezzlement.

OPINION

Gross income under section 61(a) includes amounts received from illegal activity such as embezzlement. See James v. United States, 366 U.S. 213, 219 (1961); United States v. Lippincott, 579 F.2d 551, 552 (10th Cir. 1978); Romer v. Commissioner, T.C. Memo. 1996-287.

Where taxpayers fail to keep accurate records, respondent has considerable discretion in how the taxpayers' income is to be calculated. See Erickson v. Commissioner, 937 F.2d 1548, 1553 (10th Cir. 1991), affg. T.C. Memo. 1989-552; Webb v. Commissioner, 394 F.2d 366, 372 (5th Cir. 1968) ("when the taxpayer has defaulted in his task of supplying adequate records, he is not in a position to be hypercritical of the Commissioner's labor"), affg. T.C. Memo. 1966-81; Factor v. Commissioner,

281 F.2d 100, 108 (9th Cir. 1960) ("all that the Tax Court can do is to 'make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making'", quoting Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930)), affg. T.C. Memo. 1958-94.  Respondent's reconstruction of income need only be reasonable in light of all the surrounding circumstances, and bank deposits are generally treated as prima facie evidence of taxable income.  See, e.g., Parks v. Commissioner, 94 T.C. 654, 658 (1990); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963).

Generally, taxpayers bear the burden of proving that determinations made by respondent are erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Respondent contends that for the years in issue the cash deposits into the bank accounts owned by petitioner and his wife (after accounting for wages, loans, interfund transfers, and other nontaxable funds) constitute funds petitioner embezzled from the OPP and must be included in petitioner and his wife's gross income.

Petitioner argues that the cash deposits in question relate to family lands seized in the 1940's by the Government of Iran and, as an inheritance to petitioner, should be excluded from income under section 102.  Also, petitioner alleges that each

month beginning in 1986 cash was brought to his home from Iran by foreign students or politicians. Petitioner contends that respondent has not established a sufficient link between petitioner and the embezzled funds and that respondent's calculations of income are arbitrary and capricious. We disagree.

Petitioner has provided no credible evidence that the unexplained deposits into petitioner and his wife's personal bank accounts constitute anything other than proceeds of petitioner's embezzlement activity. We reject as a total fabrication petitioner's allegation that the cash came from Iran as an inheritance.

The evidence in this case establishes, among other things, petitioner's guilty plea acknowledging a $668,783 restitution obligation to LDS Hospital, LDS Hospital's internal investigation showing that petitioner embezzled approximately $800,273, and detailed bank account statements evidencing significant and regular unexplained cash deposits into petitioner and his wife's bank accounts.

In light of the ample evidence linking petitioner with the embezzled funds and in the absence of the actual cash register daily sales reports that would establish the precise amounts embezzled by petitioner, respondent's determination is sustained

that, for the years 1986 through 1991, petitioner omitted a cumulative total of $668,783 in embezzlement income. We sustain respondent's determination of petitioner's income for each year.

With regard to the fraud additions to tax and fraud-related penalties, respondent has the burden of proving fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b); Bagby v. Commissioner, 102 T.C. 596, 607 (1994). Indicia of petitioner's fraud in this case include understatements of income, illegal activity, inadequate books and records, dealing in cash, and implausible or inconsistent explanations. See, e.g., Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Clayton v. Commissioner, 102 T.C. 632, 647 (1994).

The evidence clearly and convincingly establishes that petitioner realized significant income from embezzlement and that he intentionally failed to report such income on his and his wife's joint Federal income tax returns. For each year in issue, petitioner is liable for the fraud additions to tax and fraud-related penalties as determined by respondent.

To reflect the foregoing,

Decision will be entered for respondent.