Charles L. **TIDWELL** and Corinne S. Tidwell, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 8459.

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1962.

Decided Jan. 12, 1962.

Wesley M. Walker, Greenville, S. C. (Leatherwood, Walker, Todd & Mann, Greenville, S. C., on brief), for petitioners.

Earl J. Silbert, Attorney, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attorneys, Department of Justice, Washington, D. C., on brief), for respondent.

Before BRYAN and BELL, Circuit Judges, and PREYER, District Judge.

PREYER, District Judge.

This is an appeal from a determination by the Tax Court of deficiencies in the taxpayer's [1] federal income tax for the year 1955. Taxpayer claimed deductions for the expenses of operating an automobile over and above a partial reimbursement by his employer. He further claimed deductions under § 1231 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 1231, contending that the sales profit from real estate lots sold by taxpayer during the taxable year (1955) were taxable as capital gain rather than as ordinary income. The claimed deductions were disallowed.

Expenses of Operating the Automobile

In 1955, about twice a week, taxpayer used his car to drive from the mill at which he normally worked to Watts Mill, of which he was manager, a distance of 37 miles each way. He was reimbursed eight cents a mile by his employer for this business travel. This travel amounted to 5761 miles, for which he was reimbursed $477.68. He also used this car for commuting to work and for personal travel as well as for company business. On his 1955 return he treated the entire expense of operating the car as a business expense, claiming as a deduction the excess over the amount for which he was reimbursed, or an additional amount of $919.42. The Tax Court sustained the Commissioner's determination that he was not entitled to deduct any amount in excess of the amount he was reimbursed by his employer, ruling that taxpayer failed to prove that his business travel expenses exceeded the reimbursed amount.

We think the Tax Court's ruling must be upheld. Expenses for commuting to work and personal travel are, of course, not deductible. Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S. Ct. 250, 90 L.Ed. 203. If the car is used for both personal and business travel, taxpayer has the burden of establishing by detailed evidence the amount to be allocated to each. Bennett v. Commissioner, 139 F.2d 961 (8 Cir. 1944); Heuer v. Commissioner, 32 T.C. 947, affirmed per curiam, 283 F.2d 865 (5 Cir. 1960). Taxpayer made no attempt to allocate the expense, but claimed the entire amount and offered no proof to substantiate his claim. He argues in this Court that his use of the automobile for personal travel was de minimis, but this inference cannot be drawn simply from the fact that the record leaves open the question of division of use and is otherwise indefinite as to the expense of operating the car.[2] Taxpayer's burden of proving that the costs of operating the car exceeded the allowable amount as de-

---

1. Since Corinne S. Tidwell is a party only because she filed a joint income tax return with her husband, Charles L. Tidwell will be referred to as the taxpayer.

2. e. g. taxpayer testified as follows:

"Q—Were you able to operate your automobile and to meet your expenses on the basis of the eight cents a mile?

"A—Well, we don't think eight cents a mile is enough. However, that is all they pay us.

"Q.—Did it cost you more than that?

"A—I can't answer that. I would think so, yes, sir. Because—that is including depreciation and tires and things of that sort."

termined by the Commissioner is clear, and he has not discharged that burden.

### Sale of the Real Estate Lots

■ This phase of the case presents the oft-litigated issue of whether sales profits are taxable as ordinary income or as capital gain. Section 1221 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1221, excludes from the definition of capital assets "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". No fixed formula exists for determining whether property is held primarily for sale to customers in the ordinary course of a taxpayer's business. Rather, a congeries of factors is to be considered and weighed, no one factor being necessarily decisive. Kaltreider v. Commissioner, 255 F.2d 833 (3 Cir. 1958); Stockton Harbor Indus. Co. v. Commissioner, 216 F.2d 638 (9 Cir. 1954), certiorari denied, 349 U.S. 904, 75 S.Ct. 581, 99 L.Ed. 1241. Taxpayer disagrees with the relative importance attached to various factors by the Tax Court and the Commissioner, but we do not understand him to contend seriously—in any event, there is no showing—that improper legal criteria have been applied. In the absence of any such showing, whether or not property is held primarily for sale to customers in the ordinary course of a taxpayer's business is a question of ultimate fact to be decided by the Tax Court. Lakin v. Commissioner, 249 F.2d 781 (4 Cir. 1957); Peebles v. Commissioner, 249 F.2d 92 (4 Cir. 1957). Unless clearly erroneous, its finding must stand.

■ The Tax Court concluded that the property was held primarily for sale to customers in the ordinary course of trade or business. We think the record supports this conclusion.

The facts indicate that taxpayer and W. K. Stringfellow were both employed by J. P. Stevens Company, a textile manufacturer, in executive capacities. On September 21, 1953, they purchased jointly 4.24 acres of land from Stevens. On July 20, 1954, taxpayer and Stringfellow purchased 19.69 acres of land contiguous to the first tract from Stevens for $20,000. Cash was paid for both tracts, each contributing one-half of the purchase price. Taxpayer borrowed $10,000 to purchase his interest in the second tract and used as security for the loan property other than real estate. Soon after purchasing the second tract, taxpayer and Stringfellow took steps to divide both tracts into residential lots, built roads, secured approval of the subdivision from the zoning authorities, and obtained water and sewage service for the subdivided lots. They also arranged with real estate agents to advertise the lots for sale, and to sell them at agreed upon prices. The subdivided lots were placed on the market for sale approximately six months after the purchase of the second tract. Fifteen lots were sold in the taxable year 1955, seven for cash and eight on the installment basis. In 1956, four lots were sold. By March 1960, thirty-eight lots had been sold out of a total of sixty-eight.

Taxpayer contends that he purchased the two tracts only for purposes of "investment", and that the rapid sales of lots were compelled by his need to repay the loan. But there is sufficient evidence in the record which justifies the inference to the contrary drawn by the Tax Court. If taxpayer had been chiefly interested in paying off his debt, it is a fair assumption that he would not have sold eight out of the fifteen lots in 1955 on the installment basis. Nor is there any real indication in the record that taxpayer was under compelling financial pressure. Furthermore, where a taxpayer subdivides his property and offers it for sale shortly after he has purchased it, the courts have understandably rejected his claim that he bought for purpose of investment. Bistline v. United States, 260 F.2d 77 (9 Cir. 1958); Rollingwood Corp. v. Commissioner, 190 F.2d 263 (9 Cir. 1951). Perhaps conflicting inferences might reasonably have been drawn in the taxpayer's favor, but certainly it cannot be said that the Tax Court's conclusions were clearly erroneous.

Taxpayer urges this Court to follow the line of decisions represented by Camp v. Murray, 226 F.2d 931 (4 Cir. 1955), and Barrios' Estate v. Commissioner, 265 F.2d 517 (5 Cir. 1959). The common denominator in this line of cases is that the property had been held for a long period of time before it was subdivided and offered for sale. Either the property had been used for other purposes for which it was no longer profitable, or the property was inherited property which the taxpayers wished to liquidate. None of these cases reveals a taxpayer who actively sought out the land to buy and who then promptly subdivided and improved it and offered it for sale.

The decision of the Tax Court is affirmed.

Affirmed.