Herbert CASHVAN et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Marvin SIMON et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. Nos. 4764, 4765.

United States District Court
E. D. Virginia,
Norfolk Division.

May 17, 1967.

T. Howard Spainhour, Norfolk, Va., for plaintiffs.

C. V. Spratley, Jr., U. S. Atty., for defendant.

OREN R. LEWIS, District Judge.

MEMORANDUM OPINION

These tax refund cases involving questions of law and fact common to both were consolidated for trial—there was an additional bad debt issue in the Cashvan case.

The common issue submitted to the Court for determination involves the question of whether or not some five parcels of real estate owned by Simon and

Cashvan, partners, were entitled to capital gain treatment for income tax purposes—the bad debt issue in the Cashvan case involves the question of whether a loan made to a half-brother became worthless during the year deducted and whether money given to another half-brother was a loan or gift and, if a loan, whether it became worthless during the year deducted.

Many of the facts and exhibits were stipulated and agreed to by the parties through their respective counsel. Marvin Simon and Herbert Cashvan built and sold houses in and around the Norfolk area beginning in the early '50s, either as partners or through corporate entities. They had developed and sold several residential subdivisions prior to 1955. In some cases they bought finished lots and built houses thereon. In others they bought raw land, developed it into lots and built houses thereon.

In November of 1955 they purchased the Coleman farm containing some 109 acres, part of which was in Norfolk County, part of which was in Princess Anne County. There was considerable frontage on Indian River Road in both counties. It was then obvious that Indian River Road would soon be improved and that the frontage land could then be used for commercial development. When purchased the Coleman farm was one parcel of land zoned for residential use.

Simon and Cashvan bought the farm partly to use in connection with their house-building business and partly for investment—a shopping center. Shortly after obtaining title to the land they engaged professional help in laying out the subdivision and designing the proposed shopping center. They had the land abutting Indian River Road rezoned for commercial usage and employed a real estate firm to obtain the necessary leases. Signs announcing the proposed shopping center were erected on the rezoned frontage. Some twenty "letters of intent" were soon obtained. There was some delay in building the shopping center, occasioned by difficulty in obtaining adequate financing. The first lessee moved in during the fall of 1958. The shopping center was substantially completed on or before the date of this hearing. The residential subdivision was then fully completed and sold.

The profits from the land used for house building was declared and taxed as ordinary income.

Five parcels of the rezoned commercial land were sold, two in 1956 and three in 1957. The remainder, housing the shopping center and apartments, is still owned by Simon and Cashvan or by corporate entities in which they are the sole stockholders.

The profits from the sale of the five commercial properties were declared as capital gains.

The Government claims these profits should be taxed as ordinary income to the individual partners. We disagree.

The first parcel was bought by Mr. Abrams for trade to Esso for Esso land adjacent to his cleaning plant on Monticello Avenue. This swap never materialized and the land was reconveyed to Simon and Cashvan. Abrams bought at about the same time a fifty-foot strip for the building of a pick-up station for his cleaning business. These sales were initiated by the buyer, not the sellers.

The next sale was to Armistead & Morrison for a combination hardware, furniture and oil delivery business. This parcel was on the eastern end of the rezoned land and fitted in with the proposed shopping center. These purchasers were willing to lease if Simon and Cashvan would build a building suitable for their needs. Such a building could not be adequately financed and the sale followed. Armistead & Morrison initiated this sale.

The other sales were to three petroleum companies, Tydol, Esso and Phillips 66. None would lease. All insisted upon owning the land. Simon and Cashvan's real estate advisers thought these filling stations would fit in with the proposed shopping center and so advised them. These sales followed. All were initiated by the buyers, none by the sellers.

■ No fixed formula exists for determining which property is held primarily for sale to customers in the ordinary course of a taxpayer's business. Rather, a congeries of factors is to be considered and weighed, no one factor being necessarily decisive. Tidwell v. Commissioner of Internal Revenue, 298 F.2d 864 (4th Cir.1962). See also Harcum v. United States, 164 F.Supp. 650, at p. 652 (E.D. Va.1958).

The Government, in argument, conceded that had the taxpayers been engaged in a business or profession other than that of builders, there would be no question, on the facts in this case, that the income here questioned would be entitled to capital gains treatment.

■ Simon and Cashvan were in the business of building and selling houses, not in the business of developing and selling commercial land. They intended when they purchased the Coleman farm to hold the Indian River Road frontage for investment purposes. All of their acts and deeds since the date of this purchase confirm that intent. None of the commercial land has ever been subdivided into lots or advertised for sale. No customers were ever solicited. The five parcels in question were bought by the purchasers as distinguished from being sold by the owners. The sales here made were few in number, small in dollar value, measured by the acreage and overall value of the commercially zoned frontage land. Clearly the land here sold was not property held by the taxpayers primarily for sale to customers in the ordinary course of their trade or business. Profits derived from the sale of the five parcels are entitled to capital gain treatment, and it will be so ordered.

■ Herbert Cashvan has failed to satisfy the Court that the Irving Cashvan loan became worthless during the year it was claimed as a bad debt deduction. No real effort was ever made to collect this indebtedness. No demand for payment was ever made. The debt was not reduced to judgment. Irving Cashvan did not go into bankruptcy when his business failed. He had property in his own name at that time and continued to have an interest in property until 1962. There was no evidence submitted during this hearing indicating with any degree of certainty what assets, if any, were owned by Irving Cashvan during the year this loan was declared a bad debt.

The Court finds the money Herbert Cashvan gave his half-brother, Leon Yarrow, a gift—not a loan. The bad debt deduction claimed for this loan will be denied.

■ Thirteen hundred dollars of this money was evidenced by a blank note signed by Leon and Belle Yarrow. There was no evidence indicating that Belle Yarrow was without assets at the time this money was declared a bad debt. Thirty-four hundred fifty dollars was evidenced by a demand note signed by Harlee Building Company by Leon Yarrow. No formal demand for the payment of either of these notes was ever made. The notes were not placed in a bank for collection and no interest was charged or paid. This alleged loan was not reduced to judgment. Leon Yarrow was adjudicated a bankrupt by this Court in August 1957. These notes were not listed among his debts.

The cost of the transcript of the proceedings ($225.90) will be taxed as part of the costs.

The amount of refund due each taxpayer in these two cases should be recomputed in accordance with these findings. Counsel for the plaintiffs should then prepare an appropriate order, submit it to the United States Attorney for this District for approval as to form, and then to the Court for entry.

The Clerk will send copies of this memorandum opinion to counsel of record.