**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

DON C. MONTGOMERY; JUDY
MONTGOMERY,

     Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent-Appellee.

No. 98-9007
(T.C. NO. 20005-93)
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY**, **EBEL**, and **LUCERO**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Appellants Don and Judy Montgomery appeal, *pro se*, from the United States Tax Court's decision sustaining income tax deficiencies of $13,805 for taxable year 1988, and $5,732 for taxable year 1989, together with $5,287 in penalties. We exercise our jurisdiction under 26 U.S.C. § 7482, and reverse and remand in part, and sustain the Tax Court's decision in all other respects.

BACKGROUND

The facts of this case involve a litany of financial transactions conducted by Mr. Montgomery while performing services for a business owned by his son-in-law, Tom Petty. These facts are fully set out in the Tax Court's decision. *See Montgomery v. Commissioner*, No. 20005-93, 1997 WL 337117, 73 T.C.M. 3095 (CCH) (U.S. Tax Ct. Jun. 18, 1997). In short, Mr. Montgomery and Mr. Petty began their business relationship in 1982, when Mr. Petty and Mr. Montgomery entered into a fuel transportation business called "Pet-Don" to which Mr. Montgomery contributed both a tractor and a trailer as start-up capital.[1] In 1988, Mr. Petty purchased H&B Transport, Inc. (H&B), an Oklahoma City company, for

---

[1] We note the Tax Court extended every benefit to Mr. Montgomery in finding he owned the tractor and trailer at issue. While Mr. Montgomery claims sole ownership of the trailer because it was titled in his name, and co-ownership of the tractor with Mr. Petty, Mr. Petty testified they co-owned both the tractor and trailer and that Pet-Don and Mr. Petty's other business, H&B Transport, Inc., made the payments on both.

the purpose of transporting fuel for other companies. Beginning in April 1988, Mr. Montgomery began performing services for H&B by issuing all checks drawn on H&B's primary checking account at First Interstate Bank of Oklahoma (First Interstate) for H&B's disbursements.[2] During the period Mr. Montgomery performed this service for H&B, he did not receive a formal salary. While at H&B, Mr. Montgomery worked with his former sister-in-law, Ann MacKall, who performed basic bookkeeping and administrative functions for H&B and also did not receive a formal salary for her services.

To keep track of H&B's deposits and disbursements, Mr. Montgomery and Ms. MacKall used the company's rudimentary "pegboard ledger" system whereby information written on a check automatically transferred by carbon paper to the ledger. The pegboard also contained a column for deposit entries, a column for the current balance, and a column in which Mr. Montgomery and Ms. MacKall sometimes entered notations as to the issued check's purpose. Other than the pegboard, the only other documents reflecting Mr. Montgomery's monetary transactions for H&B consisted of bank statements and canceled checks which

---

[2] Tom Petty was the only other individual with authority to sign checks on the First Interstate account. Mr. Montgomery had sole signature authority with respect to a second account at Community Bank.

Mr. Petty's mother, Melba Petty, collected. Mr. Montgomery's and Ms. MacKall's services to H&B ended in June 1989, when Mr. Petty moved to Oklahoma City and assumed control of the company.

The tax issues at the heart of this case arise from unreported income resulting from a vehicle H&B made payments on and gave to Mr. Montgomery, and several financial transactions involving Mr. Montgomery while he performed services at H&B. The vehicle at issue is a 1988 Lincoln Mark VII (Lincoln) which Mr. Montgomery continued to possess for his personal benefit after termination of his services at H&B. The other unreported income stems from money Mr. Montgomery received from financial transactions he performed while at H&B. The first of these transactions involves Mr. Montgomery's receipt of seven payments totaling $35,976.42 from a company called Trans State Pavers (Trans State) for services rendered by H&B, which the Commissioner and Tax Court determined Mr. Montgomery did not deposit into H&B's account.

The next unreported income transaction involves Mr. Montgomery's execution of a check for $1,500 on H&B's account for "travel expense and repairs," which he deposited in a bank account over which only he exercised

exclusive dominion and control.[3]  Another transaction involves $800 Mr. Montgomery received from the difference between a $5,900.40 check he executed made payable to First Interstate and a $5,100.40 cashier's check he purchased and made payable to H&B's insurance company.  Mr. Montgomery also signed a check on H&B's account for $1,500 cash and then purchased a cashier's check without documenting where he remitted it.  In addition, six checks were drawn on H&B's account made payable to Mr. Montgomery for $9,577.62, without receipts supporting these disbursements.  Finally, Mr. Montgomery signed two checks on H&B's account made payable to First Interstate, and apparently received cash in the amount of $2,097 without submitting receipts or explaining why he received the money.

As a result of an Internal Revenue Department audit, the Commissioner of Internal Revenue determined Mr. Montgomery received income arising from these transactions, which he failed to report as income.  The Commissioner sent a deficiency notice to Mr. and Mrs. Montgomery for "substantial underpayment" of

---

[3]  This account was set up in H&B's name at Community Bank where Mr. Montgomery's wife acted as an officer.  The Tax Court found Mr. Montgomery exercised exclusive dominion and control over these funds because Mr. Montgomery was the only person authorized to withdraw funds from this account, the account was never used to satisfy expenses incurred by H&B, and Mr. Petty testified he "never signed anything at Community Bank."

taxes, due to negligence, for taxable year 1988 and 1989, and also accessed

corresponding penalties for negligent underpayment. Mr. and Mrs. Montgomery

filed a petition contesting the deficiency notice. Following a trial, the Tax Court

issued a detailed decision sustaining the Commissioner's deficiency notice in

regard to the Lincoln and the monetary transactions described.[4] The Tax Court

also denied Mrs. Montgomery's motion to vacate its decision, declining to apply

the "innocent spouse" exception.

Mr. and Mrs. Montgomery now appeal the Tax Court's factual findings

concerning the Lincoln and most of the financial transactions involved in the

deficiency notice.[5] Specifically, as to the payments from Trans State that Mr.

Montgomery received but allegedly did not deposit in the H&B account, Mr. and

---

[4] The Tax Court determined various other transactions cited by the Commissioner totaling $31,862.24 did not constitute income to Mr. Montgomery. Because the Commissioner does not appeal this determination, discussion of these transactions is unnecessary.

[5] In their appeal brief, Mr. and Mrs. Montgomery do not contest the Tax Court's finding the $1,500 deposited into the Community Bank account controlled by Mr. Montgomery constitutes income or its findings sustaining the Commissioner's imposition of the negligence penalties under 26 U.S.C. §§ 6661, 6662 and 6653, in effect at the time in question. Because Mr. and Mrs. Montgomery fail to contest these issues, they are deemed waived. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994). The negligence penalties thereby apply to the transactions we deem constitute unreported income to Mr. and Mrs. Montgomery.

Mrs. Montgomery contend they could not carry their burden of proving the inaccuracy of the tax deficiency because they did not possess copies of H&B's First Interstate bank statements during the audit and trial. They suggest the bank statements now attached to their appeal brief are not new evidence, but merely substantiate the pegboard entries showing Mr. Montgomery deposited the Trans State payments into H&B's account rather using the money for personal use. They also contend the Tax Court erred in finding Mr. Montgomery's and Ms. MacKall's testimonies as to these payments were "vague [and] self-serving," and in refusing to rely on the pegboard or Mr. Montgomery's and Ms. MacKall's typed summaries of the pegboard. Alternatively, they argue the Commissioner, through his auditor, should carry the burden of correlating deposits and money transfers into H&B's account.

As to the other transactions, Mr. and Mrs. Montgomery appeal the Tax Court's findings, claiming: (1) the Lincoln does not constitute income because Mr. Montgomery swapped his Pet-Don tractor and trailer for the Lincoln and testimony established he used the Lincoln for business purposes; (2) the cashier's check for $1,500 signed by him and written out to cash should not constitute income to him because the endorsement on the back of the cashier's check belongs to someone other than Mr. Montgomery; (3) the $8,000 check executed

by Mr. Petty and made payable to Mr. Montgomery was for the purpose of Mr. Petty paying himself back for a deposit he make into H&B's account; (4) the money from the other five checks made payable to Mr. Montgomery was used to cover the truck drivers' expenses; and (5) the $800 from the insurance payment and the $2,097 in cash from the two checks written by Mr. Montgomery were not used for personal use, although Mr. and Mrs. Montgomery admit they possess no records to prove otherwise.

In addition, Mr. and Mrs. Montgomery contend Mrs. Montgomery should not be held responsible under the "innocent spouse" exception because she testified she knew nothing about the unreported income from H&B. Mr. and Mrs. Montgomery further assert that after sequestering the other witnesses, the Tax Court improperly allowed the Internal Revenue Service's revenue agent to sit at counsel's table and listen to witness testimony before testifying. Finally, for the first time on appeal, they claim the revenue agent improperly encouraged them to sign a consent form that increased the statutory audit time.

DISCUSSION

I. Income Attributable to Mr. and Mrs. Montgomery

Before proceeding, we consider the standard of review required in tax

deficiency cases for negligent underpayment of taxes. Because the underpayment in this case involves "unreported income," special considerations apply. Ordinarily, the Commissioner's statutory notice of deficiency is presumptively correct and the burden rests on the taxpayer to establish the determination of income is erroneous. *Erickson v. Commissioner*, 937 F.2d 1548, 1551 (10th Cir. 1991). However, because this is an unreported income case in which Mr. Montgomery must prove he did not earn the income claimed, the Commissioner must introduce some reasonable foundation supporting the tax deficiency in order to preserve the presumption of correctness.[6] *See id.* at 1551; *accord* Jacob Mertens, Jr., Law of Federal Income Taxation, §§ 50:440-441, at 404-06 (1999 ed.) Once the presumption of correctness is preserved, Mr. Montgomery must carry his burden of showing the determination of income is arbitrary or erroneous. *Erickson*, 937 F.2d at 1551, 1554-55. If Mr. Montgomery makes such a showing, the presumption of correctness disappears and the government is required to prove the existence and amount of the unreported income. *Jones*, 903 F.2d at 1304; Mertens, Law of Fed. Income Tax., at § 50:491.

---

[6] While the deficiency notice in this case alleges no fraud or illegal activity, the standard of review is similar to those cases involving unreported income based on the taxpayers' possession of, or connection to, assets stemming from criminal activity, where the Commissioner must provide a reasonable foundation for the notice of deficiency in order to preserve the presumption of correctness. *See Erickson*, 937 F.2d at 1551-52; *Jones v. Commissioner*, 903 F.2d 1301, 1304 (10th Cir. 1990).

In this case, the Tax Court found the Commissioner supplied "ample evidence linking [Mr. Montgomery] to the funds which form the basis of the [tax] deficiency," and that Mr. and Mrs. Montgomery failed to carry their burden of proof to show the Commissioner's determination of income is erroneous. Because these determinations are factual, we may not set them aside unless they are clearly erroneous. *Erickson*, 937 F.2d at 1555. A finding is clearly erroneous if it is without support in the record, or if, after reviewing all the evidence, we are left with the definite and firm conviction a mistake was made. *See In re Davidovich*, 901 F.2d 1533, 1536 (10th Cir. 1990). We review the Tax Court's legal conclusions *de novo*. *See LDL Research & Dev. II, Ltd. v. Commissioner*, 124 F.3d 1338, 1342 (10th Cir. 1997).

We first turn to whether the Commissioner produced a reasonable foundation to support its deficiency notice. At trial, the Commissioner introduced copies of Mr. and Mrs. Montgomery's income tax returns, canceled H&B's checks and cashier's checks from which Mr. Montgomery received the proceeds, and witness testimony. Because the Tax Court thoroughly analyzed this evidence and found it supported the deficiency notice (*Montgomery*, at *3-8), we decline to duplicate its analysis at this juncture other than to conclude the Tax Court's finding on this matter is not clearly erroneous. The Commissioner plainly

-10-

produced evidence sufficient to show a reasonable foundation for the deficiency notice as to the income at issue, and therefore preserved the presumption of correctness.

Because the Commissioner produced a reasonable foundation to support the deficiency notice, we next look at the Tax Court's finding that Mr. Montgomery failed to meet his burden of overcoming the presumption of correctness. We proceed by examining the incidents of income at issue to determine if the Tax Court's findings are clearly erroneous.

## A. Lincoln

The law clearly establishes a vehicle provided by employer to its employee constitutes a fringe benefit which is taxable as "gross income." *See* 26 U.S.C. § 61; 26 C.F.R. §§ 1.61-2T(a) (1988) and 1.61-21(a) (1989). The fact Mr. Petty and H&B did not formally employ Mr. Montgomery is not material since the person to whom the vehicle is provided "need not be an employee of the provider of the fringe benefit," but may include "any person performing services in connection with which a fringe benefit is furnished." 26 C.F.R. §§ 1.61-2T(a)(4)(ii) and 1.61-21(a)(4)(ii).

The Tax Court found the Lincoln constituted taxable income because (1) Mr. Montgomery paid for the Lincoln out of funds received from Mr. Petty and H&B;[7] (2) Mr. Montgomery used the vehicle for personal use during his service to H&B and it remained in his possession after he left H&B,[8] and (3) Mr. Montgomery did not testify to his use of the Lincoln or maintain any records on the purpose for which he used the Lincoln.

In finding the Lincoln constituted taxable income, the Tax Court rejected Mr. Montgomery's assertion he traded his tractor and trailer for the Lincoln, finding: (1) the tractor and trailer constituted a capital contribution to Pet-Don; (2) no evidence existed documenting the trade; (3) Mr. Montgomery could not trade the tractor and trailer, which he contributed to Pet-Don and did not own, for

---

[7] In making this determination, the Tax Court found Mr. Petty made the $4,000 down payment on the vehicle, and money from H&B's checking account was used by Mr. Montgomery to pay loan payments, insurance, fuel, tires, maintenance service and repairs. The Tax Court also found Mr. Montgomery paid off the remaining loan balance on the Lincoln by endorsing a $19,694.92 check issued by the United States Government to H&B, depositing it into a checking account in which only he had signature authority, and then using the proceeds to pay off the outstanding loan.

[8] The Tax Court's finding is supported by the government's revenue agent's testimony Mr. Montgomery did not furnish any records concerning his business use of the automobile. If the Lincoln was used for both personal and business travel as Mr. Montgomery suggests, he has the burden of establishing by detailed evidence the amount to be allocated to each. *See Tidwell v. Commissioner*, 298 F.2d 864, 865 (4th Cir. 1962).

the Lincoln he did not own; and (4) the fact the property, if traded, did not constitute a like-kind exchange. On appeal, Mr. Montgomery relies on a copy of trailer's title which lists Mr. Montgomery as the owner, and a copy of the tractor's registration which lists Tom Petty as co-owner, to establish they were not part of a capital contribution made to Pet-Don. However, a review of the record persuades us the Tax Court did not clearly err in finding the tractor and trailer constituted Mr. Montgomery's capital contribution into a company for which he gained a partnership interest.

On appeal, Mr. Montgomery attempts to establish business use of the Lincoln by relying on Ms. MacKall's testimony which he claims shows he sometimes used the Lincoln to take cash to H&B truck drivers broken down on the road. A review of her testimony shows only that Ms. MacKall generally discussed the need to travel to certain locations to assist H&B truck drivers, without specific reference to Mr. Montgomery's use of the Lincoln. Moreover, the Tax Court apparently did not credit this testimony. Similarly, Mr. Montgomery offers his own explanation he used the Lincoln for business because he kept it at home on twenty-four-hour call in case H&B's trucks broke down. Because Mr. Montgomery did not offer this newly-proffered explanation at trial and has not shown this to be newly discovered evidence, we will not consider it

-13-

on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Given the circumstances, including Mr. Montgomery's retention of the Lincoln after termination of his services to H&B, we conclude the Tax Court's findings are not clearly erroneous and the Lincoln constitutes taxable income attributable to Mr. Montgomery.

B. Trans State Payments

The Commissioner and Tax Court determined Mr. Montgomery received seven payments totaling $35,976.42 from Trans State for services rendered by H&B which he did not deposit into H&B's account. These payments derived from a system in which Mr. Montgomery executed checks on H&B's account to purchase cashier's checks made payable to a company called Jordan Distributers.[9] H&B drivers gave the cashier's checks to a representative of Jordan Distributers in exchange for fuel which the drivers then delivered and sold to Trans State. Each time Trans State received a shipment of fuel from H&B, its representative would pay the H&B's drivers for the fuel with either cash or a cashier's check in an amount equal to or exceeding the amount originally paid to Jordan Distributers. The H&B driver then delivered the money to Mr. Montgomery.

---

[9] It is unclear why Mr. Montgomery and Ms. MacKall listed Trans State as the remitter on the cashier's checks.

In an effort to rebut the presumption of correctness concerning these payments, Mr. Montgomery at trial offered the pegboard ledger into evidence. It notes three deposits in the same amounts as the checks and cashier's checks paid to Jordan Distributors for fuel delivered to Trans State, as follows:

| Date | Check No. | Amount | Cashier's Check | Date and Deposit | |
|------|-----------|--------|-----------------|------------------|---|
| 11/02/88 | 1334 | $2,150.00 | $2,150.00 | 11/02/88 | $2,150.00 |
| 11/07/88 | none | $6,525.39 | $6,523.39 | 11/07/88 | $6,525.39[10] |
| 11/09/88 | none | $6,500.00 | $6,500.00 | 11/09/88 | $6,500.00 |

After a lengthy *voir dire* discussion concerning the pegboard ledger, the Tax Court received the pegboard into evidence as a business record of the company. However, the Tax Court did not credit the pegboard ledger stating it was "unorganized and sloppy," and finding "[a]lthough there appear to have been some unexplained deposits into H & B's First Interstate account ... there are no notations on the pegboard ledger evidencing deposits corresponding to the cashier's checks purchased." On appeal, Mr. and Mrs. Montgomery submit copies of deposit slips and bank statements for H&B's account which they claim

---

[10] The total deposit consisted of $10,043.39 with a notation it included a sum of $6,525.39.

substantiate the three deposit notations made on the pegboard.

The pegboard ledger maintained by Mr. Montgomery and Ms. MacKall is, at best,"unorganized and sloppy,"  A review of the pegboard ledger shows a severely inept attempt to record and correlate the daily monetary transactions Mr. Montgomery conducted on behalf of the company.  Nevertheless, the pegboard ledger clearly shows three deposits matching the amounts paid and received for the fuel at issue.  We find this evidence, under the circumstances of this case, sufficient to meet Mr. Montgomery's burden in overcoming the Commissioner's presumption of correctness in its deficiency notice.  The burden then fell on the Commissioner to show Mr. Montgomery did not actually deposit these payments from Trans State and took the money he received from Trans State for his personal use.  The Commissioner failed to do so.

Accordingly, the Tax Court's findings, with regard to these three deposits, are clearly erroneous.  Based on our reliance on the pegboard ledger, it is unnecessary to address the issue of Mr. and Mrs. Montgomery's submission of the deposit slips and bank statements as new evidence.  As to the other four payments from Trans State at issue, we agree with the Tax Court's finding Mr. Montgomery offered no evidence to overcome his burden, and we conclude, that even if

considered, the deposit slips and bank statements offered on appeal by Mr. Montgomery do not show he deposited the remaining Trans State payments in the H&B account.  Therefore, the Tax Court properly determined the amount of the four remaining payments constitute unreported income.

Other Transactions

As to the other transactions involved, the Tax Court determined Mr. Montgomery failed to carry his burden because he offered no explanation for his receipt of the money at issue.  We agree.  The record shows Mr. Montgomery offered no competent evidence, including receipts, to show why he received the money or what he did with the money once received.[11]  "[T]axpayers are required to keep adequate records or books from which their correct tax liability may be determined."  *Erickson*, 937 F.2d at 1552-53 (citing 26 U.S.C. § 6001; 26 C.F.R. § 1.6001-1; *Jones*, 903 F.2d at 1303; *Anson v. Commissioner*, 328 F.2d 703, 705 (10th Cir. 1964) ("'[T]he privilege of original self-assessment accorded the

---

[11]  The balance of the evidence establishes receipts were not kept for expenses claimed by Mr. Montgomery.  Mr. Montgomery offered contradictory testimony on whether receipts for expenditures or other transactions were ever collected or retained.  Ms. MacKall testified she and Mr. Montgomery did not keep records of the cash for which checks were written.  Melba Petty testified she never received or found any receipts.  Mr. Petty testified he did not receive any receipts from Mr. Montgomery and did not know if they existed.  Although receipts were requested, the government's revenue agent never received any receipts.

taxpayer carries with it the burden of support through the maintenance of records which clearly and accurately reflect income.'"")) We believe this responsibility applies here, where Mr. Montgomery received unexplained income from transactions he himself performed while at H&B.

Absent records persuading us otherwise, we conclude the Tax Court did not err in finding Mr. Montgomery failed to provide credible evidence to show what happened to the $9,577.62 from six checks drawn on H&B's account and made payable to Mr. Montgomery. The Tax Court discredited Mr. Montgomery's testimony he gave the money he received from five of the six checks to H&B's drivers for their expenses. We give the Tax Court's credibility determinations great deference. *See LDL Research*, 124 F.3d at 1344 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)). The Tax Court also found "implausible and incredible" Mr. Montgomery's explanation the other check for $8,000 Mr. Petty executed and made payable to Mr. Montgomery was for the sole purpose of Mr. Petty paying himself back for another deposit Mr. Petty put into the H& B account. We agree with the Tax Court that Mr. Petty's execution of a check to Mr. Montgomery in order to pay himself back is implausible and defer to the Tax Court's credibility determination on this issue. Indeed, Mr. Petty testified that although he could not recall the reason he issued the $8,000 check to Mr.

Montgomery, he did not sign large checks unless it was for something like fuel. Mr. Montgomery provided no receipts or other evidence to show the $8,000 he received he used to pay for fuel or other H&B expenses.

As to the cashier's check for $1,500 that Mr. Montgomery claims someone else endorsed, we note he signed the cashier's check that is written out to cash. The cursive Mr. Montgomery contends is an endorsement is unintelligible and it is impossible for us to determine if it reflects an incomplete or partially deleted endorsement or signature, or is merely a notation or initials of bank personnnel or someone else. We therefore must agree with the Tax Court that Mr. Montgomery failed to sustain his burden as to this income item.

Finally, Mr. and Mr. Montgomery admit they possess no records to prove Mr. Montgomery did not receive $800 from the balance of the check and cashier's check remitted for H&B's insurance or the $2,097 from two checks written by Mr. Montgomery for cash, but nevertheless deny Mr. Montgomery received any income from these sources. Mr. and Mrs. Montgomery's general denial of liability is insufficient to meet their burden where, as here, the Commissioner has shown the deficiency notice has a reasonable foundation or rational basis. *See Avco Delta Corp. Canada Ltd. v. United States*, 540 F.2d 258, 262 (7th Cir.

1976), *cert. denied*, 429 U.S. 1040 (1977).

## II.  Innocent Spouse Exception

The Tax Court denied Mr. and Mrs. Montgomery's motion to vacate its decision based on the "innocent spouse" exception, finding "the evidence does not establish that Mrs. Montgomery did not know, or did not have reason to know, of the unreported income."  In making this finding, the Tax Court stated "Mrs. Montgomery did not testify at trial, and although the parties stipulated that she was not employed by H&B, there is no evidence in the record to establish that she had no reason to know of the unreported income."  The Tax Court further found "nothing in the record to establish that it is inequitable to hold Mrs. Montgomery liable for the deficiency."  On appeal, Mr. and Mrs. Montgomery point out Mrs. Montgomery did in fact testify and stated she did not have anything to do with, nor knew anything about, H&B.

We review the Tax Court's factual determination Mrs. Montgomery is not eligible for relief under the "innocent spouse" exception for clear error.  *See Reser v. Commissioner*, 112 F.3d 1258, 1262 (5th Cir. 1997); *Feldman v. Commissioner*, 20 F.3d 1128, 1135 (11th Cir. 1994); *Guth v. Commissioner*, 897 F.2d 441, 443 (9th Cir. 1990).  Keeping the proper standard of review in mind, we

begin by discussing the applicable criteria for applying the "innocent spouse" exception. Generally, when a joint return is filed, the spouses are jointly and severally liable for the entire tax. *See* 26 U.S.C. § 6013(d)(3). If, as here, taxes result from a substantial understatement of taxable income, a taxpayer, such as Mrs. Montgomery, may be relieved from liability for that tax, and additions thereto, if she establishes each of the following four elements:

(1) a joint return has been made for a taxable year;

(2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of her spouse;

(3) in signing the return she did not know, and had no reason to know, that there was such substantial understatement; and

(4) taking into account all the facts and circumstances, it is inequitable to hold her liable for the deficiency

*See* 26 U.S.C. § 6013(e)(1) (repealed 1998); *Reser*, 112 F.3d at 1262-63.

Mrs. Montgomery has the burden of proving these elements by a preponderance of the evidence. *Friedman v. Commissioner*, 53 F.3d 523, 528 (2d Cir. 1995); *Stevens v. Commissioner*, 872 F.2d 1499, 1504 (11th Cir. 1989). Because 26 U.S.C. § 6013(e) is remedial in nature, it is construed and applied liberally in favor of the person claiming its benefits. *Friedman*, 53 F.3d at 528.

Liberally construing Mrs. Montgomery's brief, it appears she is appealing

the third and fourth elements under § 6013. We begin with the third element: whether she knew or had reason to know the joint returns she signed for tax years 1988 and 1989 contained a substantial understatement of tax. A spouse has reason to know of a substantial understatement if she knows facts sufficient to lead a reasonably prudent taxpayer in her position to question the legitimacy of the tax claimed. *See Price v. Commissioner*, 887 F.2d 959, 965 (9th Cir. 1989). The knowledge contemplated by the "innocent spouse" exception "is not knowledge of the tax consequences of a transaction but rather knowledge of the transaction itself." *Quinn v. Commissioner*, 524 F.2d 617, 626 (7th Cir. 1975).

We note Mrs. Montgomery did in fact testify. Because the Tax Court apparently did not recall Mrs. Montgomery testifying, it is highly unlikely the Tax Court made any credibility assessment. As a result, we are left to determine whether Mrs. Montgomery testified to any of the incidents of unreported income at issue in this case, and if so, whether a credibility assessment of her testimony by the Tax Court was necessary.

First, Mrs. Montgomery did not testify on Mr. Montgomery's use and possession of the Lincoln, and offered no other evidence to carry her burden of showing she did not know, or had no reason to know, of this unreported income

-22-

incident. Because Mr. and Mrs. Montgomery reside together, and Mr. Montgomery used and continued to possess the Lincoln after terminating his services with H&B, it extremely unlikely she did not know of his continued possession and use of this vehicle. Therefore, we hold the Tax Court did not commit clear error in finding Mrs. Montgomery failed to carry her burden by a preponderance of the evidence with respect to the Lincoln. Accordingly, we conclude the Tax Court's failure to consider her testimony is harmless error with respect to this issue.

As to the $1,500 check Mr. Montgomery deposited into the account at Community Bank,[12] Mrs. Montgomery testified she served as a Vice-President at the bank, knew of the account, and on several occasions, made transactions into it for Mr. Montgomery. However, Mrs. Montgomery offered no testimony as to whether she knew of Mr. Montgomery's receipt and deposit of $1,500 in the Community Bank account. Giving Mrs. Montgomery the benefit of the doubt and fully crediting her testimony, we conclude the Tax Court did not err in its finding she failed to provide evidence to carry her burden of showing she did not know of

---

[12] Although Mr. and Mrs. Montgomery did not appeal the Tax Court's finding that this amount constitutes income, a liberal reading of their appeal brief leads us to believe they are appealing the Tax Court's finding that this income is attributable to Mrs. Montgomery.

the $1,500 deposit. Moreover, given her testimony as to her position as an officer with the bank, and familiarity and dealings with this account, we cannot say it was clear error for the Tax Court to conclude Mrs. Montgomery failed to show by a preponderance of the evidence she had no reason to know of the unreported income at issue. For these reasons, the Tax Court's failure to consider her testimony on this issue constitutes harmless error.

As to the remaining transactions, Mrs. Montgomery testified she did not have any knowledge of the "operations" at H&B. She did not testify with respect to the unreported income at issue except in extremely general terms, during Mr. Montgomery's direct examination of her as a witness, as follows:

> MR. MONTGOMERY: I think that is all that she would testify
> to, except the fact that she has probably never seen me bring any
> extra money home from H&B. I don't know if she would testify to
> that or not.

> MRS. MONTGOMERY: Are you asking me a question? No.
> I never saw anything from it.

This is the extent of the evidence Mrs. Montgomery offered to meet her burden of showing she had no reason to know of the unreported income. Regardless of any credibility determination and applying the provisions of § 6013 liberally in Mrs. Montgomery's favor, we nevertheless find this conclusory and self-serving denial alone insufficient to carry her burden in establishing by a

-24-

preponderance of the evidence she had no reason to know of the multiple transactions resulting in the unreported income to Mr. Montgomery. Therefore, we conclude the Tax Court did not err in its finding, and hold its failure to consider her testimony, under the circumstances, is harmless error.

Finally, Mrs. Montgomery failed to offer any evidence on the fourth element of the "innocent spouse" exception under 26 U.S.C. § 6013(e)(1)(D): whether any inequity arises from holding her liable. For these reasons, we affirm the Tax Court's determination Mrs. Montgomery is not entitled to the "innocent spouse" exception under 26 U.S.C. § 6013(e).

### III. Miscellaneous Contentions

At trial, Charlotte Caldwell – the revenue agent for the Internal Revenue Service – sat at counsel's table. At government counsel's request, the Tax Court ordered the witnesses sequestered under Federal Rule of Evidence 615, but permitted Mrs. Montgomery to remain as well as Ms. Caldwell as a representative of the Commissioner.[13] While Mr. and Mrs. Montgomery allege the Tax Court

---

[13] Federal Rule of Evidence 615 states:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a

-25-

improperly allowed Ms. Caldwell to sit at counsel's table and listen to witness testimony before testifying, they fail to show how her presence prejudiced their case, or why she did not meet the exception under Rule 615 which allows representatives of the parties to remain in the courtroom. The decision to sequester witnesses is left to the discretion of the trial court and will be reversed only on a showing of abuse of discretion or probable prejudice. *See United States v. Prichard*, 781 F.2d 179, 183 (10th Cir. 1986). Mr. and Mrs. Montgomery make no such showing.

Finally, Mr. and Mrs. Montgomery make a conclusory and unsupported claim the revenue agent improperly encouraged them to sign a consent form which increased the statutory audit time. However, because Mr. and Mrs. Montgomery raise this issue for the first time on appeal, we will not consider it. *See Singleton v. Wulff,* 428 U.S. 106, 120 (1976).

---

party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a person authorized by statute to be present.

CONCLUSION

In this case, the Commissioner made the requisite showing to support its deficiency notice for substantial underpayment of taxes, based on unreported income, for the taxable years 1988 and 1989, thus preserving the presumption of correctness. Mr. and Mrs. Montgomery offered no evidence to overcome the presumption, except for three payments received from Trans State and deposited in the H&B account. Mrs. Montgomery further failed to carry her burden in showing she is entitled to the "innocent spouse" exception under 26 U.S.C. § 6013(e).

Accordingly, we **AFFIRM** the Tax Court's decision sustaining the income tax deficiency, except with respect to the three previously identified Trans State payments, which we **REVERSE** and **REMAND** for further proceedings to determine the appropriate reduction in taxes and penalties concerning those three payments.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge