T.C. Summary Opinion 2010-97

UNITED STATES TAX COURT

DONALD BROWN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23554-07S.                    Filed July 19, 2010.

Donald Brown, pro se.

<u>Kathleen K. Raup</u>, for respondent.

RUWE, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $34,488 deficiency and a $6,898 accuracy-related penalty in petitioner's 2004 Federal income tax.[2] After concessions,[3] the issues we must decide are: (1) Whether, pursuant to Rule 142 and section 7491, the burden of proof has shifted to respondent regarding the disputed deficiency; (2) whether petitioner had unreported gross receipts or sales (self-employment income); (3) whether petitioner is entitled to deduct certain business expenses claimed on Schedule C, Profit or Loss From Business (Sole Proprietorship); and (4) whether petitioner is liable for an accuracy-related penalty under section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The stipulated facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner provided a post office box mailing address in New Jersey.[4]

Petitioner graduated from college and law school, and he has been practicing law since 1958. From 1958 to 1992 petitioner was

---

[2]All figures have been rounded to the nearest dollar.

[3]Respondent has allowed and/or conceded a number of issues and expenses that were previously disallowed. We discuss only those issues and expenses that remain in dispute.

[4]The parties stipulate that petitioner's current address is also in New Jersey.

employed by the law firm Fox Rothschild. In 1979 petitioner became a managing partner at Fox Rothschild, at which time Fox Rothschild had approximately 40 attorneys. During his tenure as managing partner, which ended in or about 1987, the number of attorneys working for the firm increased to 120.

During 2004 petitioner engaged in the practice of law as a sole practitioner. Petitioner maintained and operated a law office in Bala Cynwyd, Pennsylvania (Bala Cynwyd office), and used this address on his 2004 Federal income tax return, on his business letterhead, for court proceedings, and for billing purposes. In addition to the Bala Cynwyd office, petitioner asserts that he also maintained a home office.

During 2004 petitioner maintained two checking accounts at Commerce Bank (Commerce Bank accounts). Petitioner was the only person with signature authority and exercised complete control over the Commerce Bank accounts. Petitioner deposited both personal funds and funds from the operation of his law practice into the Commerce Bank accounts. Petitioner also paid both personal and law-practice-related expenses from the Commerce Bank accounts. During 2004 petitioner's deposits into the Commerce Bank accounts totaled $150,085. Respondent concedes that deposits totaling $56,821 were from nontaxable sources.

Petitioner timely filed a 2004 Form 1040, U.S. Individual Income Tax Return, on which he reported gross receipts or sales

of $69,509 and claimed Schedule C expenses of $94,816.
Petitioner used the cash method of accounting for his law
practice in 2004. In preparing his 2004 Federal income tax
return petitioner contemporaneously created ledger sheets to aid
in preparing the Schedule C.

On July 13, 2007, respondent issued to petitioner a notice
of deficiency. The deficiency was the result of increased gross
receipts (pursuant to a bank deposits analysis) and disallowed
Schedule C business expenses (which also resulted in
computational adjustments). Respondent's bank deposits analysis
resulted in a determination that petitioner underreported his
Schedule C gross receipts by $36,394. The notice of deficiency
also reflects that respondent made the following adjustments to
petitioner's claimed Schedule C deductions:

| Expense | Amount Per Return | Amount Per Exam | Adjustment |
|---|---|---|---|
| Car and truck expenses | $7,450 | $3,688 | $3,762 |
| Depreciation | 652 | 652 | -0- |
| Office expenses | 3,151 | 940 | 2,211 |
| Rent/lease--vehicles | 5,261 | 2,631 | 2,630 |
| Rent/lease--other business property | 32,301 | 17,194 | 15,107 |
| Repairs and maintenance | 3,260 | -0- | 3,260 |
| Supplies | 1,369 | 1,369 | -0- |
| Travel | 2,316 | -0- | 2,316 |
| Meals and entertainment | 3,972 | -0- | 3,972 |
| Utilities | 9,108 | 593 | 8,515 |
| Other expenses--filing costs | 8,110 | 2,351 | 5,759 |
| Other expenses | [1]17,867 | -0- | 17,867 |
| Total | [2]94,817 | 29,418 | 65,399 |

[1]On his 2004 Schedule C petitioner labeled the $17,867 of
other expenses as "outsourcing temp. secretary service", which
allegedly represents payments to petitioner's son, Seth Brown, for
work performed for petitioner's law practice.
[2]The difference between what was reported on petitioner's
2004 Federal tax return ($94,816) and this figure is due to
rounding.

On brief respondent concedes that petitioner's unreported gross receipts should be reduced to $23,754 and that petitioner may deduct Schedule C expenses of $49,132 (i.e., respondent has decreased the disallowed Schedule C expenses to $45,684).  The following table summarizes the 2004 Schedule C expenses petitioner reported and the amounts respondent has conceded:

| Expense | Amount Per Return | Amount Allowed |
|---|---|---|
| Car and truck expenses | $7,450 | $3,688 |
| Depreciation | 652 | 652 |
| Office expense | 3,151 | 1,291 |
| Rent/lease--vehicles | 5,261 | 2,631 |
| Rent/lease--other business property | 32,301 | 17,194 |
| Repairs and maintenance | 3,260 | -0- |
| Supplies | 1,369 | 1,369 |
| Travel | 2,316 | -0- |
| Meals and entertainment | 3,972 | -0- |
| Utilities | 9,108 | 1,025 |
| Other expenses--filing costs | 8,110 | 2,351 |
| Other expenses[1] | 17,867 | 18,931 |
| Total | 94,817 | 49,132 |

[1]Respondent allowed some expenses which were claimed as "Other expenses--filing costs" as "Other expenses".  Additionally, respondent allowed an expense of $14,891 as "Other expenses", which petitioner did not claim on the Schedule C attached to his 2004 Federal tax return.

## Discussion

### A.  Burden of Proof

In general, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving, by a preponderance of the evidence, that these determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The taxpayer is required to maintain records that are sufficient to enable the Commissioner to determine his correct tax liability.  See sec. 6001; sec. 1.6001-

1(a), Income Tax Regs. Additionally, the taxpayer bears the burden of substantiating the amount and purpose of each item claimed as a deduction. See Higbee v. Commissioner, 116 T.C. 438, 440 (2001); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Section 7491(a)(1) provides that if, in any court proceeding, the taxpayer introduces credible evidence with respect to factual issues relevant to ascertaining the taxpayer's liability for tax, the burden of proof with respect to such factual issues will be placed on the Commissioner. See Higbee v. Commissioner, supra at 442 ("In order for section 7491(a) to place the burden of proof on respondent, the taxpayer must first provide credible evidence."). For the burden to shift to the Commissioner, however, the taxpayer must have complied with the substantiation and recordkeeping requirements of the Code and have cooperated with reasonable requests by the Commissioner for "witnesses, information, documents, meetings, and interviews". Sec. 7491(a)(2)(A) and (B).

Petitioner argues that he has met the requirements to shift the burden of proof to respondent because, as he alleges, he has introduced credible evidence regarding the Schedule C expenses and has not run afoul of the limitations under section 7491(a)(2)(A) and (B). More specifically, petitioner argues that his 2004 ledger of business expenses coupled with copies of bank

statements and canceled checks from the Commerce Bank accounts amounts to credible evidence. Respondent argues that petitioner has neither provided credible evidence nor cooperated with reasonable requests for witnesses, information, documents, meetings, and interviews. Thus, respondent states: "While the ledger, along with the bank records supplied by respondent, may support that petitioner made expenditures, no evidence was introduced to substantiate that these expenditures were ordinary and necessary and were for the purpose indicated."

In Higbee v. Commissioner, supra at 442, we recognized that section 7491 does not state what constitutes credible evidence. The conference committee's report provides a glimpse into Congress' intent for the use of the term "credible evidence" in section 7491(a):

> Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). A taxpayer has not produced credible evidence for these purposes if the taxpayer merely makes implausible factual assertions, frivolous claims, or tax protestor-type arguments. The introduction of evidence will not meet this standard if the court is not convinced that it is worthy of belief. If after evidence from both sides, the court believes that the evidence is equally balanced, the court shall find that the Secretary has not sustained his burden of proof. [H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.]

See Higbee v. Commissioner, supra at 442. The conference report also explains the purpose of the limitations set forth in section 7491(a)(2):

> Nothing in the provision shall be construed to override any requirement under the Code or regulations to substantiate any item. Accordingly, taxpayers must meet applicable substantiation requirements, whether generally imposed or imposed with respect to specific items, such as charitable contributions or meals, entertainment, travel, and certain other expenses. Substantiation requirements include any requirement of the Code or regulations that the taxpayer establish an item to the satisfaction of the Secretary. Taxpayers who fail to substantiate any item in accordance with the legal requirement of substantiation will not have satisfied the legal conditions that are prerequisite to claiming the item on the taxpayer's tax return and will accordingly be unable to avail themselves of this provision regarding the burden of proof. Thus, if a taxpayer required to substantiate an item fails to do so in the manner required (or destroys the substantiation), this burden of proof provision is inapplicable. [H. Conf. Rept. 105-599, supra at 241, 1998-3 C.B. at 995; fn. refs. omitted.]

As discussed in greater detail below, while we recognize that petitioner's 2004 ledger coupled with his bank statements and canceled checks tends to establish that certain expenditures were made, we are not persuaded that petitioner's uncorroborated self-serving testimony, which we need not accept, see Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), establishes that the disputed deposits were not includable in gross receipts, nor does it establish the amount and business purpose of the disputed expenditures. See Higbee v. Commissioner, supra at 440-441. Accordingly, we hold that to the extent that the issue of who

bears the burden of proof is dispositive in the determination of whether petitioner had unreported gross receipts or sales and whether petitioner is entitled to deductions for expenses claimed on his 2004 Schedule C, the burden remains with petitioner.

B.  Unreported Gross Receipts or Sales (Self-Employment Income)

Section 61(a) defines gross income for purposes of calculating taxable income as "all income from whatever source derived".  Courts have long recognized that the definition of gross income includes accessions to wealth, clearly realized, and over which the taxpayer has complete dominion and control. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).

Where a taxpayer fails to maintain records adequate to determine his correct tax liability, the Commissioner is entitled to reconstruct his income by any reasonable method.  See Erikson v. Commissioner, 937 F.2d 1548, 1553 (10th Cir. 1991), affg. T.C. Memo. 1989-552.  Courts have long sanctioned the use of the bank deposits method as a reasonable method for computing income. Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977).  Furthermore, where a bank deposits analysis is used, the bank deposits are prima facie evidence of the receipt of income.  Tokarski v. Commissioner, supra at 77. Where the Commissioner has determined that certain deposits are income, the taxpayer has the burden of showing that the

determination is incorrect. <u>Estate of Mason v. Commissioner</u>, <u>supra</u> at 657.

The parties have stipulated that the aggregate deposits into the Commerce Bank accounts totaled $150,085 during 2004. Respondent conceded that $56,821 of the aggregate deposits was from nontaxable sources. Thus, respondent contends that petitioner underreported gross receipts by $23,755 ($93,264 in taxable deposits minus $69,509 reported by petitioner).

Petitioner argues that certain deposits, or a portion of them, are not includable in gross income because the deposits included reimbursement for costs associated with litigation. Petitioner's allegations concern the following deposits:

| Date | Source of Deposit | Amount of Deposit | Amount Petitioner Alleges is Not Includable |
|------|-------------------|-------------------|---------------------------------------------|
| 1/9/04 | Mammuth & Rosenberg | $12,919 | $253 |
| 3/8/04 | PA Land Dev. L.P. | 3,650 | [1]3,650 |
| 5/21/04 | TIG Insurance | 25,000 | [2]14,891 |
| 6/15/04 | David Skolnick | 1,000 | 1,000 |
| 9/1/04 | Noor Flooring, Inc. | 47 | 47 |
| 11/4/04 | Royal Floor N Construction | 900 | 200 |
| 12/10/04 | Mammuth & Rosenberg | 1,977 | 44 |
| 12/15/04 | Noor Flooring | 1,000 | 356 |
| 12/20/04 | Estate of Snyder | 1,000 | 1,000 |
| 12/28/04 | Noor Flooring | 750 | [2]219 |
| Total | | 48,243 | 21,660 |

[1]The parties stipulate that respondent has conceded this deposit is nontaxable.
[2]We note that the parties stipulate that respondent allowed this amount as a deduction for "Other expenses".

Petitioner's contention is misplaced. The bank statements establish that the contested deposits were made into the Commerce Bank accounts. Petitioner commingled business and personal funds

in the Commerce Bank accounts, and he had complete dominion and control over these funds without restriction as to their disposition.  To the extent petitioner has shown that any portion of the deposits was actually used for litigation costs, respondent has allowed a deduction.  Accordingly, we hold that petitioner underreported his gross receipts or sales (i.e., his self-employment income) on his 2004 Schedule C by $23,755.

C.  Schedule C Expenses/Deductions

Deductions are strictly a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to the deductions claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Section 162(a) authorizes a deduction for business expenses if a taxpayer proves that the expenses (1) were paid or incurred during the taxable year, (2) were incurred to carry on the taxpayer's trade or business, and (3) were ordinary and necessary expenditures of the business.  See Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971).  An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved."  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business.

See Commissioner v. Heininger, 320 U.S. 467, 471 (1943).
However, personal, living, or family expenses generally are not
deductible.  See sec. 262(a).

A taxpayer must substantiate amounts claimed as deductions
by maintaining the records necessary to establish that he or she
is entitled to the deductions.  Sec. 6001; sec. 1.6001-1(a),
Income Tax Regs.  Thus, under section 162, the recordkeeping
requirement under section 6001 not only requires petitioner to
keep records sufficient to establish that an expense was paid
during the taxable year (such as his 2004 business expense ledger
coupled with bank statements and copies of canceled checks), see
sec. 162(a)(1), but also requires that the records establish that
the expenses were ordinary and necessary in carrying on
petitioner's trade or business, see sec. 162(a)(2) and (3).

Petitioner claimed Schedule C expenses of $94,817.
Respondent has conceded that petitioner is entitled to $49,132 in
deductions for Schedule C expenses.  We now address those
expenses petitioner claimed at trial and on brief.

1.  Automobile Expenses

Under section 274(d) a taxpayer is required to meet
heightened substantiation requirements for, inter alia, travel,
meals, lodging, entertainment, computer, automobile, gifts, and
cellular telephone expenses.  Section 274(d) requires the
taxpayer to establish by adequate records or by sufficient

evidence corroborating the taxpayer's own statement: (A) The amount of such expense or other item; (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift; (C) the business purpose of the expense or other item; and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift.

On his 2004 Federal income tax return petitioner claimed a $7,450 deduction for car and truck expenses and an additional $5,261 deduction for the rent or lease of a vehicle. In the notice of deficiency respondent allowed petitioner's parking expenses in full but disallowed 50 percent of all other expenses related to automobiles. At trial petitioner continued to contend that he was entitled to deduct 100 percent of his automobile expenses.

Automobile expenses are subject to the heightened substantiation requirements of section 274(d), as described above. Petitioner, however, has failed to meet these heightened substantiation requirements. Other than indicating on his 2004 Schedule C that he drove his car 18,000 miles for business and 2,100 miles for commuting, petitioner has not provided a contemporaneous mileage log, gasoline receipts, or anything more than his self-serving testimony to establish what portion of his use of the car was for business purposes. Petitioner has failed

to prove that he is entitled to any automobile expense deduction in excess of the amount respondent allowed.[5]

### 2. AOL Expense

On line 18 of his 2004 Schedule C petitioner claimed an office expense of $3,151, which he contends includes $358 for payments made to AOL for Internet and email service.  Although petitioner testified that Internet and email service was necessary for communication purposes, he has not established whether the AOL expense was for Internet and email service to his office or to his home, nor has he established what portion of the use, if any, was for business versus personal use.  Consequently, we find that petitioner has failed to adequately substantiate the portion, if any, of the AOL expense attributable to business use.

---

[5]When taxpayers establish that they have incurred deductible expenses but are unable to substantiate the exact amounts, we can estimate the deductible amounts in some circumstances, but only if the taxpayers present sufficient evidence to establish a rational basis for making the estimates.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  In estimating the amount allowable, we bear heavily upon taxpayers whose inexactitude is of their own making.  See Cohan v. Commissioner, supra at 544.  There must be sufficient evidence in the record, however, to permit us to conclude that a deductible expense was paid or incurred.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

The Cohan doctrine, however, is not available to estimate expenses that fall under the purview of sec. 274(d).  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Accordingly, we hold that petitioner is not entitled to an office expense deduction beyond that already allowed by respondent.

3. Telephone Service

On line 25 of his 2004 Schedule C petitioner claimed a $9,108 deduction for utilities, including what petitioner contends is a $2,861 expense for telephone service. In the notice of deficiency respondent allowed a utilities expense for 50 percent of petitioner's cell phone bill.

Petitioner, via the statements from his Commerce Bank accounts, has established that he made payments to AT&T and Verizon, but he has failed to establish that the payments were ordinary and necessary to carrying on his trade or business. It remains unclear whether the payments to AT&T and Verizon were for telephone service to his office, his home, or both, and if to his home what portion of the telephone service was for personal versus business use.

At trial petitioner asserted that the AT&T service was to his Bala Cynwyd office and that he did not have any AT&T service to his home. Petitioner, however, has failed to provide any evidence, such as an invoice or bill establishing that the AT&T service was to his Bala Cynwyd office, corroborating his self-serving statement. Consequently, we find that petitioner has failed to adequately substantiate a business purpose for his payments to AT&T and Verizon. Accordingly, we hold that

petitioner is not entitled to a deduction for utilities expenses beyond that already allowed by respondent.

    4.   <u>Deductions Related to the Business Use of a Taxpayer's Home</u>

Section 280A(a) provides as a general rule that no deduction otherwise allowable to an individual "shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."  This seemingly prohibitory rule is ameliorated by section 280A(c), which provides exceptions for certain business use.  As relevant herein, section 280A(c)(1) provides:

> SEC. 280A(c).  Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.--
>
> > (1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--
> >
> > > (A) as the principal place of business for any trade or business of the taxpayer,
> > >
> > > (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or
> > >
> > > (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

Thus, for a deduction to be allowed under section 280A(c)(1) "the taxpayer must establish that a portion of his dwelling unit is (1) exclusively used, (2) on a regular basis, [and] (3) for the

purposes enumerated in subparagraphs (A), (B), or (C) of section 280A(c)(1)". <u>Hamacher v. Commissioner</u>, 94 T.C. 348, 353 (1990).

Petitioner did not claim a home office deduction on line 30 of his 2004 Schedule C, nor did he attach to his return a Form 8829, Expenses for Business Use of Your Home. Rather, petitioner claimed his alleged home office expenses in other areas of his 2004 Schedule C; e.g., on line 20b as rent or lease of other business property and on line 21 as repairs and maintenance. In this regard, petitioner testified that his home office expenses included items such as cable television to his home paid to Comcast, Internet and email service to his home through AOL, mortgage payments (which petitioner stated he treated as rent since neither he nor his wife owned the home), other home maintenance items, such as cutting and maintaining the lawn, and utilities.

In the notice of deficiency respondent disallowed in full petitioner's claimed repairs and maintenance expense of $3,260 because petitioner had not established business use of his home. Furthermore, respondent disallowed all of petitioner's claimed utilities expense, except for 50 percent of the cell phone expense as previously discussed, because petitioner had not established business use of his home. Respondent did allow $17,194 of the $32,301 petitioner claimed for rent or lease of other business property as it was verified as rent for the Bala

Cynwyd office.  The remaining $15,107 purportedly relates to mortgage (or rent) payments for petitioner's home.

On the basis of the record before us, we find that petitioner has not established the portion of his home that was used exclusively on a regular basis for business as required by section 280A(c)(1).  Consequently, we need not determine whether petitioner's home office was his principal place of business, see sec. 280A(c)(1)(A), or whether his home office was used by clients in meeting with petitioner in the normal course of his trade or business, see sec. 280A(c)(1)(B).  Accordingly, we hold that petitioner is not entitled to any deductions related to the business use of his residence beyond those which responded has already allowed.

5.  "Other Expenses"

On line 27 of his 2004 Schedule C petitioner claimed a $25,977 deduction for other expenses.  The $25,977 claimed deduction included $17,867 for "outsourcing temp. secretary service" and $8,110 for "court stenographers, transcripts, filing costs, expert fees, duplication of records" (filing costs).  At trial and on brief petitioner also asserted that certain deposits made into his Commerce Bank accounts included reimbursements for litigation costs he paid (litigation costs).  See supra p. 10.

In the notice of deficiency respondent disallowed the full $17,867 deduction for other expenses as reported on Schedule C,

explaining that the expenses were for payments made to petitioner's son or cash withdrawals from an automatic teller machine and that no business purpose has been established. The only indication that petitioner gave at trial or on brief that he paid any person for services rendered to his law practice, other than a referral fee, was that he made payments to his son, Seth Brown.

Petitioner testified that his son is a graduate of Widener Law School, that his son set his own hours, and that his son worked for him, performing such tasks as contacting clients, "doing research", and "running my computer system". Petitioner provided "weekly time sheets" that were allegedly prepared by his son. The Commerce Bank accounts statements also tend to establish that petitioner wrote numerous checks made payable to Seth Brown during 2004. Upon review of the record before us, we are unable to reconcile the copies of canceled checks payable to Seth Brown with the alleged weekly time sheets, and petitioner has not made an attempt to reconcile them at trial or on brief. Despite petitioner's testimony that his son had told him that he prepared a Form 1099 to be filed for the payments made to him, the record is devoid of any such evidence. Petitioner's son did not testify. Furthermore, petitioner testified that he wrote checks to his son drawn on the Commerce Bank accounts for both personal and work-related purposes.

Petitioner has failed to prove what portion, if any, of the payments to his son was ordinary and necessary business expenses. Accordingly, we hold that petitioner is not entitled to deduct any of the payments made to his son.

As to the remaining $8,110 of filing costs, respondent disallowed $5,759 because petitioner established neither a business purpose nor that it was paid during the taxable year. Respondent allowed a $2,351 deduction for filing costs. At trial and on brief petitioner continues to contend that he is entitled to the disallowed filing costs reported on the Schedule C and the additional litigation costs he claimed at trial and on brief. Petitioner, however, has failed to establish that he actually paid these costs during the taxable year.

Respondent, however, has agreed to allow petitioner a $21,282 deduction for his 2004 Schedule C line 27 "Other expenses" ($18,931 as other expenses, $14,891 of which was not claimed by petitioner on his 2004 Federal income tax return). We hold that petitioner is not entitled to a deduction for other expenses (including filing and litigation costs) beyond that which respondent has allowed.

D.  Accuracy-Related Penalty

In the notice of deficiency respondent determined that petitioner is liable for a $6,898 accuracy-related penalty under section 6662(a). Pursuant to section 7491(c), respondent bears

the burden of production with respect to petitioner's liability for any penalty or addition to tax. If respondent meets this burden, then petitioner bears the burden of establishing that an exception to imposition of the penalty applies. See Higbee v. Commissioner, 116 T.C. at 446-447.

Section 6662(a) and (b)(1) and (2) provides for an addition to tax equal to 20 percent of the portion of the underpayment attributable to, inter alia, negligence or disregard of rules or regulations or any substantial understatement of tax.

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" means any careless, reckless, or intentional disregard. Sec. 6662(c); see also Matthies v. Commissioner, 134 T.C. ___, ___ (2010) (slip op. at 22). Negligence is the failure to exercise due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Matthies v. Commissioner, supra at ___ (slip. op. at 22) (citing Allen v. Commissioner, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348 (9th Cir. 1991), and Neely v. Commissioner, 85 T.C. 934, 947 (1985)).

An understatement of income tax is defined as the excess of the amount of the tax required to be shown on the return for the taxable year over the amount of the tax shown on the return. See sec. 6662(d)(2)(A). For purposes of section 6662, there is a

substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000.  See sec. 6662(d)(1)(A).

On his 2004 Federal income tax return petitioner reported zero taxable income and, therefore, zero tax owed.  Respondent has shown that petitioner failed to keep adequate books and records or to substantiate properly the items in question.  Such a failure is evidence of negligence.  See sec. 1.6662-3(b)(1), Income Tax Regs.  Furthermore, after accounting for the concessions made before and at trial, petitioner's deficiency has been preliminarily recalculated at $20,906.  Thus, the understatement of income tax ($20,906) exceeds the greater of 10 percent of the tax required to be shown on petitioner's Federal income tax return ($0 tax + $20,906 = $20,906, 10% of $20,906 = $2,091) or $5,000.  Therefore, petitioner's understatement is substantial.  Consequently, we conclude that respondent has met his burden of production for the determination of an accuracy-related penalty based on either negligence or disregard of rules or regulations or a substantial understatement of income tax.

On brief, other than a broad assertion that he contests the accuracy-related penalty, petitioner fails to dispute the imposition of the accuracy-related penalty.  Petitioner did not set forth or discuss the points of law and any disputed questions

regarding this issue, and he has neither contended nor established that he qualified for an exception to the imposition of the accuracy-related penalty; e.g., the reasonable cause exception found in section 6664(c).  On the basis of the record we hold that petitioner is liable for the accuracy-related penalty.

In reaching our holdings herein, we have considered all arguments made, and to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>
<u>under Rule 155</u>.